COMMONWEALTH vs. EUGENE RAMEY, JR.
(and a companion case[1]).

Suffolk. January 7, 1975. — June 10, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Evidence*, Best and secondary evidence, Alibi. *Practice, Criminal,*
Charge to jury, Argument by prosecutor. *Constitutional Law,*
Trial by jury.

Where the defendant in a criminal case, to show that at the time of
the crime he was working at a place distant from the place of the
crime, introduced a "Time Tally" sheet copied from time punch
cards which had been available shortly after the crime but were
said to be unavailable at the time of the trial, there was no error
in a comment by the prosecutor in his closing argument on the
absence of the cards. [111-112]
A comment by the judge in a lengthy charge in a criminal case that
alibi evidence was "easily fabricated and difficult to disprove" did
not deprive the defendants of their right to have factual questions
decided by the jury and to have such questions decided solely on
the basis of the evidence. [113-114]
Discussion of proper instructions to a jury on alibi. [114-115]

INDICTMENTS found and returned in the Superior Court
on May 10, 1972.

The cases were tried before *Robert Sullivan,* J.

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative, ordered
direct appellate review.

*David M. Skeels* for the defendants.

*Sandra L. Hamlin,* Assistant District Attorney, for the
Commonwealth.

---

[1] Commonwealth vs. James Coleman.

QUIRICO, J.   The defendants, Eugene Ramey, Jr., and James Coleman, were tried and found guilty by a jury, and then sentenced by a judge of the Superior Court on indictments charging each with assaulting Jacob Rutman on March 22, 1972, with intent to rob him.   They appealed to the Appeals Court under G. L. c. 278, §§ 33A-33G, and we then ordered the cases transferred to this court on our motion.   See G. L. c. 211A, § 10 (A), inserted by St. 1972, c. 740, § 1.

The defendants filed identical assignments of error, each listing the same eight alleged errors, but they have argued only two of them in their joint brief.   The alleged errors not argued are deemed waived.   The issues argued and thus presented to this court for decision are:   (a) an alleged improper argument by the prosecutor concerning the absence of certain evidence relating to a defendant's alibi, and (b) the judge's alleged erroneous instruction to the jury on the subject of alibi.

The Commonwealth presented evidence which, if believed, was sufficient to permit the jury to find that about 1 P.M. on March 22, 1972, on Walk Hill Street in the Mattapan section of Boston, the two defendants assaulted Jacob Rutman with the intent to rob him, as charged in the indictments against them.

Although neither defendant testified at his trial, the defendant Coleman presented evidence of an alibi.   The evidence included testimony indicating that for some time before and after March 22, 1972, Coleman was employed by a cleaning contractor in a terminal building at the Logan International Airport, that on March 22, 1972, he was at work in the building from 6:56 A.M. to 3 P.M., and that his supervisor in that employment saw him at work in that building at various times on that day, including once about 1 P.M.   On the days when he worked there he punched a time card at the beginning and end of the work day.   The supervisor then transferred the information from the time cards to a "Time Tally" sheet.   In April, 1972, Coleman told his supervisor that

he had been arrested for something, and as a result of that conversation and a further conversation between the supervisor and Coleman's lawyer, the supervisor furnished the lawyer with a photocopy of the "Time Tally" sheet for March 22, 1972. That copy was admitted in evidence at the trial. It included entries of the hours Coleman had worked on that date. Coleman knew of the use of the daily time punch cards, and the cards were in existence when the supervisor prepared the copy of the "Time Tally" sheet for Coleman's lawyer in April, 1972, but she prepared no copy of the cards. Coleman's employer stopped all its business operations at the airport on June 1, 1972, and at that time its business records were in part thrown away and in part moved to the home of its regional manager in Topsfield.

During the trial which began on November 7, 1973, Coleman called his former supervisor and another supervisor for the same employer as witnesses. The latter testified that at the request of Coleman's counsel, made before the trial, he had searched at the airport for the March 22, 1972, time punch card for Coleman but could not find it. He believed the card and other records of the employer had been discarded and no longer existed. The testimony concerning the information contained on the time punch cards, and the manner in which the cards were used and maintained was conflicting in respect to some details brought out in cross-examination of Coleman's witnesses.

During the course of his argument to the jury the prosecutor referred to these conflicts and characterized the manner in which the time cards were kept as "a slipshod operation." He then said: "You know, in the law we have a rule of evidence that the best evidence should be presented to the Court and the jury. And in this case what would have been the best evidence? The pay cards." The defendants objected with counsel for Ramey stating "because the evidence is that they are not available." The objections were overruled and counsel for

Ramey saved an exception.[2]   There was no error in this regard.

It is true that there was evidence that the time card was not available at the time of the trial, but that alone is not conclusive on the issue.   In the first place, the jury were not compelled to believe that evidence.   However, and more important, the existence or availability of the card at the moment of trial was not the sole issue.   In April, 1972, when Coleman's counsel obtained a photocopy of a "Time Tally" sheet the daily time cards in question were in existence and he did nothing to obtain them or copies of them.   The time cards were the records of original entry.   The information originally entered on the time cards was later transferred to the "Time Tally" sheets.   A witness for Coleman testified that his time card for March 22, 1972, showed that he worked at the airport terminal, far from the scene where Rutman was assaulted, from 6:56 A.M. to 3 P.M. on that day.   The assault on Rutman occurred about 1 P.M. of that same day.   In April, 1972, Coleman was arrested for the alleged assault on Rutman on March 22, 1972.   He realized the importance of his employment records on the issue whether he was at work or at the scene of the crime on March 22, 1972; yet, when he discussed the matter of the records with his employer, he obtained only the photocopy of the "Time Tally" sheet and not the time cards.   He had the right to present evidence of the unavailability of the time cards at the time of the trial, and he did so.   The Commonwealth had the right to comment on the absence of the time cards, the primary record of Coleman's hours of work on the day in question.   It was fair to ask the jury, in effect, to consider why Coleman did not obtain the time cards or copies of them in April, 1972, when he obtained the "Time Tally" sheet.   *Grady* v. *Collins Transp. Co. Inc.* 341 Mass. 502,

---

[2] Although Coleman does not appear to have saved an exception, the Commonwealth did not make an issue thereof.

506 (1960). *Commonwealth* v. *Smith,* 342 Mass. 180, 186-187 (1961).

The judge's instructions to the jury on the subject of alibi cover almost four pages of the typewritten transcript. The defendants have extracted a passage of four sentences[3] from this total instruction and argue the judge committed error in what he said in those sentences because (a) they violate G. L. c. 231, § 81, which provides: "The courts shall not charge juries with respect to matters of fact, but they may state the testimony and the law"; and (b) they violate the defendants' constitutional rights to have factual questions decided by a jury and to have them decided solely on the basis of the evidence before the jury.

With respect to the first ground, there is a question whether G. L. c. 231, § 81, is applicable to criminal proceedings.[4] Assuming that it is, the judge's instruction on alibi, considered in its entirety, was not a charge on the facts. The instructions to the jury, including those parts going beyond the subject of alibi, properly submitted to the jury for decision all issues of fact involved in the cases. See *Commonwealth* v. *Barry,* 9 Allen 276, 277-279 (1864); *Whitney* v. *Wellesley & Boston St. Ry.* 197 Mass. 495, 502 (1908); *Cahalane* v. *Poust,* 333 Mass. 689 (1956); *Commonwealth* v. *Binkiewicz,* 342 Mass. 740, 752-753 (1961).

The defendants' claim that the disputed four sentences of the judge's instruction on the subject of alibi operated in some unexplained manner to deprive them of their

---

[3] The part of the judge's instructions being questioned by the defendants is the following: "Now, our courts have said this about alibi evidence, and it has been reaffirmed many, many times in recent years. It was said in the first instance back in 1850, and . . . [it has] been reaffirmed as the law of the Commonwealth from time to time, even as recently as the last few years. A jury should scrutinize alibi evidence carefully, very carefully. Alibi evidence is easily fabricated and difficult to disprove."

[4] As originally enacted by St. 1860, c. 115, § 5, this provision appears to have been applicable to civil and criminal proceedings alike.

right to have their cases decided by the jury solely on the basis of the evidence is without merit. We decline to test the sufficiency of the judge's instructions by reading only four sentences taken out of context from an instruction covering almost twenty pages of transcript. We are concerned with the impression left with the jury by the charge as a whole. *Commonwealth* v. *Aronson,* 330 Mass. 453, 457-458 (1953). *Commonwealth* v. *Greenberg,* 339 Mass. 557, 585 (1959). *Commonwealth* v. *Benders,* 361 Mass. 704, 705-709 (1972). We repeat that the instructions, taken as a whole, properly submitted to the jury for decision all issues of fact involved in the cases.

The propriety of instructing juries on the subject of alibi by using the language of Chief Justice Shaw in *Commonwealth* v. *Webster,* 5 Cush. 295, 319 (1850), or by using slight variations of that language, has occupied the attention of this court in a number of cases in recent years. Often the appealing defendant contends that the

---

*Commonwealth* v. *Barry,* 9 Allen 276, 278 (1864). See, e.g., *Banfield* v. *Whipple,* 14 Allen 13, 14 (1867) (civil); *Commonwealth* v. *Leonard,* 140 Mass. 473, 479-481 (1886) (criminal). The question arises, however, from the later inclusion of the section in the act relative to *civil* practice in R. L. 1902, c. 173, § 80, the immediate precursor of the present G. L. c. 231, § 81. Section 81 continues to be included in the provisions on civil pleading and practice and is expressly made applicable to various civil actions and proceedings in the various trial courts. See G. L. c. 231, §§ 141 through 146A, as amended by St. 1973, c. 1114, § 208. This inclusion, moreover, has been effected without the additional enactment of a statute, making § 81 applicable to criminal proceedings by specific reference thereto, as is the case, for example, with respect to G. L. c. 278, § 31, which provides that G. L. c. 231, §§ 115-117, inclusive, "shall apply to exceptions taken in criminal cases" as well as civil cases. This omission may be construed as evidencing the intention of the General Court to limit the applicability of G. L. c. 231, § 81, to civil proceedings, or merely as an oversight on their part. Despite this ambiguity, we have continued to cite the section as though it were applicable to criminal proceedings. See *Commonwealth* v. *Green,* 302 Mass. 547, 555-556 (1939). See also *Commonwealth* v. *Cantor,* 253 Mass. 509, 512 (1925); *Commonwealth* v. *Binkiewicz,* 342 Mass. 740, 750 (1961); *Commonwealth* v. *Myers,* 356 Mass. 343, 349 (1969).

instruction given has the effect of placing on him the burden of proving that he was not at the scene when the crime charged was committed. That claim is not made in these cases, since the judge here did not use the language claimed to be erroneous in that regard. Another part of the language commonly criticised is that which suggests that the "defence [of alibi is] often attempted by contrivance, subornation, and perjury," and that "[t]he proof, therefore, offered to sustain it, is to be subjected to a rigid scrutiny." *Ibid.* See *Commonwealth* v. *Leaster,* 362 Mass. 407, 416-417 (1972), and cases cited therein; *Sullivan* v. *Scafati,* 428 F. 2d 1023, 1025-1026 (1st Cir. 1970), cert. den. 400 U. S. 1001 (1971). This court's most recent decision on this subject, *Commonwealth* v. *McLeod,* 367 Mass. 500, 502 (1975), concludes with a helpful suggestion for avoiding further difficulties in this troublesome area.

While we have several times expressed our preference that certain portions of the so called "alibi" charge appearing in *Commonwealth* v. *Webster, supra,* not be used in instructing juries on that subject, it does not necessarily follow that a reversal must be ordered when that language or a variant thereof is used. "It is not every expression in a charge falling short of our approval which is ground for sustaining exceptions." *Commonwealth* v. *McDonald,* 264 Mass. 324, 336 (1928). *Commonwealth* v. *Taschetta,* 252 Mass. 158, 161 (1925). Nevertheless, we emphasize that the better course for trial judges to follow from now on is that contained in the suggestions of the *McLeod* case, *supra.*

*Judgments affirmed.*