COMMONWEALTH *vs.* CURTIS BERTH
(and four companion cases[1]).

Suffolk.    January 5, 1982. — April 12, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Instructions to jury, Presumptions and burden of
proof. *Alibi. Evidence,* Impeachment of credibility, Recross-exam-
ination..

A defendant who did not testify at a criminal trial and did not present any
alibi evidence could make a valid objection to the judge's instructions
on alibi where a codefendant had presented alibi evidence and where a
question might have been raised as to the accuracy of the identification
of the defendant if the jury had believed the codefendant's alibi. [786-
787]

Reversal of criminal convictions was required where the judge's charge on
alibi differed materially from that recommended in *Commonwealth*
v. *McLeod,* 367 Mass. 500 (1975), and misstated the burden of proof as
to alibi, and where its effect was not mitigated by proper instructions
thereafter as to burden of proof. [787-790]

The extent and length of cross-examination, as well as that of recross-
examination, is within the discretion of the trial judge. [790]

At a criminal trial the judge erred in permitting the prosecutor to cross-
examine an alibi witness concerning her failure to report her informa-
tion to the police before trial without requiring the prosecutor to lay
the proper foundation for such questioning. [790-791]

Any weaknesses in the identification or chain of custody of certain drugs
introduced in evidence at a criminal trial affected the weight rather
than the admissibility of that evidence. [791]

INDICTMENTS found and returned in the Superior Court
Department on January 25, 1980.

COMPLAINT received and sworn to in the Boston Munici-
pal Court Department on October 29, 1979.

[1] Of the companion cases two are against Curtis Berth, and two are
against Otis Jones, Jr.

The cases were tried in the Superior Court Department before *Flaksman,* J., a District Court judge sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael J. Traft,* Assistant District Attorney *(James J. Larkin,* Assistant District Attorney, with him) for the Commonwealth.

*Milly Whatley* for Otis Jones, Jr.

*Joseph D. Wishnow* for Curtis Berth.

NOLAN, J.    The defendants were convicted in the Superior Court of violations of G. L. c. 94C, § 32.    They appealed to the Appeals Court which reversed, finding error in the judge's charge concerning alibi.    *Commonwealth* v. *Berth,* 12 Mass. App. Ct. 936 (1981).    We granted the Commonwealth's application for further appellate review.    We agree with the Appeals Court that the judgments must be reversed and that a new trial is required.

The evidence may be summarized as follows.    On September 6, 1979, the Boston police conducted a field operation in the vicinity of 1820-1950 Washington Street.    Approximately twenty arrests were made during the course of this operation.    Detective Logan, a member of the Drug Control Unit, testified that he was positioned in an observation vehicle on Washington Street and, with the aid of binoculars, observed what appeared to be three sales of controlled substances by the defendant Berth.    Logan testified that Jones participated in two of these transactions.

Specifically, Logan testified that at approximately 10:45 A.M., a vehicle stopped in the vicinity of 1820 Washington Street, the driver left the car and walked over to Jones. After a brief conversation, the two walked over to Berth and the driver gave Berth money in exchange for a tinfoil packet.    At 11:15 A.M., another individual drove up to the vicinity of 1850 Washington Street, got out of his car, and approached Jones.    Jones and the individual walked over to Berth, and the individual passed Berth money in exchange for a tinfoil packet.    At 12:15 P.M., a third car arrived and a

passenger went directly to Berth, gave him money, and received a clear plastic bag in return. After each of these alleged sales, Berth approached another man, Michael Robinson, and gave him money.

As each transaction occurred, Logan transmitted a description of the cars involved to other police officers who subsequently stopped the vehicles and confiscated the packets. After chemical analyses, it was determined that one packet contained cocaine, one contained heroin, and a third contained no narcotic or harmful drug. A search subsequent to arrest revealed no money or drugs on Jones; Berth had $45 but no drugs. Logan was the only witness who testified to observing the defendants participating in these transactions.

Berth testified that he was not present at 1820 Washington Street during the time of the transactions. He also presented an alibi witness who testified that Berth was at her home in Mattapan between approximately 10:15 A.M. and 12:00 noon, cleaning her carpets. Jones did not testify or present an alibi witness.

Counsel for Berth submitted a written request for instructions, including the alibi instruction which we approved in *Commonwealth* v. *McLeod,* 367 Mass. 500, 502 (1975). After the judge failed to give any instruction on alibi, counsel for the defendant Jones requested the *McLeod* instruction. The judge then gave a supplemental instruction on alibi, but it was not the instruction recommended in *Mc-Leod.* Counsel for the defendant Jones objected to the charge but counsel for Berth did not. Both defendants argue on this appeal that their convictions should be reversed because of the inadequacy of the alibi instruction.

Berth was the only defendant to present an alibi. Although he requested the *McLeod* instruction, he did not object at trial to the judge's failure to give the requested instruction to the jury. See Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979). In the absence of a valid objection, the sole question before us is whether the charge as given created a "substantial risk of a miscarriage of justice." *Common-*

*wealth* v. *Freeman,* 352 Mass. 556, 564 (1967). We conclude that the charge as given did create such a risk.

Jones argues, not without some persuasion, that, although he did not present an alibi to the jury, he nevertheless benefited by Berth's alibi and was prejudiced by the judge's charge. He reasons that if the jury believed that Berth was not at the scene during the transactions, then they might also doubt Jones' presence, because the testimony presented by the Commonwealth was that Jones assisted Berth in the transactions. We have held that a defendant does not present a valid objection when he objects to an error that affects only his codefendant and which does not result in prejudice to him. *Commonwealth* v. *DiStasio,* 294 Mass. 273, 280 (1936). *Commonwealth* v. *Levine,* 280 Mass. 83, 87 (1932). The situation before us, however, is distinguishable because Jones may have been prejudiced by the judge's error.

The defendants argue that the alibi instruction given requires reversal because it reduced the Commonwealth's burden from proof beyond a reasonable doubt to a scant probability. The pertinent portion of the judge's charge reads as follows: "Now one person says one thing. Another person says another thing as to what happened. Now Mr. Berth says he was not there at a certain time. A witness says that he was not there at a certain time. The police say that he was there at a certain time. This is the alibi, so-called; the reasoning. It's really as simple as that. So don't use the word 'alibi' as anything which might be destructive in any way whatsoever. You either believe one side or you believe the other side as to what took place."

The last sentence of the charge quoted here states incorrectly the Commonwealth's burden. In *Commonwealth* v. *McLeod,* 367 Mass. 500, 502 (1975), we warned against "the clear error which would be involved if the burden of proof as to alibi evidence were put on the defendant, as was done in *Commonwealth* v. *Webster,* 5 Cush. 295, 319, 324 (1850)." Although the language in the present case did not explicitly place the burden of proof as to the alibi evidence on the defendant, certainly, at a minimum, it introduced a

confusing note on the issue of who had the burden of proof. *Commonwealth* v. *Cobb*, 5 Mass. App. Ct. 421, 424 (1977).

This confusion regarding who bore the burden of proof was not remedied by later portions of the charge. In fact, the portion of the charge quoted here was nearly the last thing the jury heard before deliberation. For this reason, the present charge is unlike the charge we reviewed in *Commonwealth* v. *Williams*, 378 Mass. 242 (1979). In *Williams*, although the defendant claimed that the alibi instruction had shifted the burden of proof to him, we found that the instruction given did not present a substantial risk of a miscarriage of justice. This was so because in that case "the judge also stated unequivocally that the introduction of alibi evidence in no way altered the burden on the Commonwealth [and] that the burden of proof beyond a reasonable doubt rested with the Commonwealth as to every element of each crime charged." *Id.* at 243. Because the trial judge in *Williams* reiterated the proper burden of proof standard numerous times during the charge, we were persuaded that there was "no reasonable likelihood that the charge taken as a whole could have led the jury to ignore the reasonable doubt test." *Id.*, quoting from *Commonwealth* v. *Leaster*, 362 Mass. 407, 416-417 (1972).

Similarly, in *Commonwealth* v. *Bowden*, 379 Mass. 472, 481 (1980), we discussed the fact that the possible burden-shifting language in the alibi instruction was "mitigated by the repeated references to the Commonwealth's bearing the burden of proof." In particular, the judge there reiterated the burden of proof standard immediately before, during, and immediately after the alibi instruction. Despite this care, we nevertheless reversed the defendant's conviction because the judge failed to charge on alibi in accordance with our directions in *McLeod*. We stated in *Bowden* that "our warnings in *McLeod* and *Ramey* [*Commonwealth* v. *Ramey*, 368 Mass. 109 (1975)], were not mere academic exercise." *Supra* at 482. We pointed out that since the trial in *Bowden* took place over a year after the *McLeod* and *Ramey* decisions, the judge had ample time to learn the

lesson of *McLeod*. This is even more true in the case at bar, which took place five years after the *McLeod* decision.

Because the instruction given in the case before us differed materially from that recommended in *McLeod* and misstated the burden of proof as to alibi, and because its effect was not mitigated by proper instructions thereafter as to the burden of proof, we hold that there is a substantial risk of a miscarriage of justice. This is especially true in light of the testimony in this case, though our holding today should not be read as requiring a judge to give a *McLeod* instruction in every case in which there is evidence of alibi even if such instruction is requested. Berth and a disinterested witness testified as to the alibi. Only one witness identified Berth as the alleged drug seller. We agree with the Appeals Court that, if the jury had been properly instructed as to alibi and if they had believed Berth's alibi and found him not guilty on the basis of misidentification, a question might have been raised as to the accuracy of the identification of Jones. 12 Mass. App. Ct. 936, 937 (1981). See generally *Commonwealth* v. *Franklin*, 366 Mass. 284, 288-291 (1974), and *Commonwealth* v. *Fatalo*, 345 Mass. 85, 88 (1962). We therefore reverse the convictions of both defendants.

The defendant Jones also argues error in the judge's instruction to the jury concerning the element of intent. Specifically, he argues that since there was no direct evidence of illegal activity by him, and therefore his guilt could be established only by evidence of a joint venture, the judge's instruction that "a person is presumed to intend the natural and probable consequences of his own acts," impermissibly relieved the Commonwealth of its burden of proving Jones' intent to distribute controlled substances. This portion of the charge is nearly identical to the charge we found to be error in *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 247 (1980), and which the United States Supreme Court ruled as being constitutionally deficient in *Sandstrom* v. *Montana*, 442 U.S. 510 (1979). In *DeJoinville*, we said that the jury reasonably could have interpreted this portion of the judge's

charge as creating an unconstitutional presumption. *De-Joinville, supra* at 254. In considering whether an error in the instruction requires reversal, "[w]e are concerned with the impression left with the jury by the charge as a whole." *Commonwealth* v. *Ramey*, 368 Mass. 109, 114 (1975). In other portions of the judge's charge on intent, he properly explained that the jury were permitted but not required to draw an inference of intent from facts or circumstances. In view of our determination that a reversal is required because of the error in the alibi instruction, we need not decide whether the over-all effect of the charge on intent would, in and of itself, require reversal.

The defendants have argued a number of errors arising from certain evidentiary rulings of the judge which we discuss now very briefly because they may recur at the retrial. The defendants argue that the judge was in error in denying their requests to recross-examine Commonwealth witnesses on matters educed on the cross-examination of those witnesses by the codefendant's counsel. We note that the extent and length of cross-examination, as well as that of recross-examination, is within the discretion of the trial judge, and his rulings thereon are seldom disturbed by an appellate court. *Commonwealth* v. *Pickles*, 364 Mass. 395, 401 (1973). *Commonwealth* v. *Gordon*, 356 Mass. 598, 602 (1970). *Commonwealth* v. *D'Agostino*, 344 Mass. 276, 278, cert. denied, 371 U.S. 852 (1962). The defendants also claim error in the judge's failure to exclude the prosecutor's cross-examination of the alibi witness concerning her failure to report her information to the police. The Appeals Court in *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 295-297 (1981), has outlined an acceptable procedure to be followed when attempting to impeach a witness on the basis of pretrial silence. In the case before us the judge did not require the prosecutor to lay a foundation for his question "by first establishing that the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means

of reporting it to the proper authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so." *Id.* at 296-297.[2] This was error.

Finally, the defendants argue error in the judge's failure to exclude the drugs and the testimony relating to the drugs. The defendants claim that there was a lack of positive identification or a possible break in the chain of custody. We note that any weaknesses that might exist in the identification or chain of custody of the evidence affect the weight rather than the admissibility of that evidence. *Commonwealth* v. *Hoffer*, 375 Mass. 369, 377 (1978). *Commonwealth* v. *Vanetzian*, 350 Mass. 491, 496 (1966).

> *Judgments reversed.*
>
> *Verdicts set aside.*

---

[2] The transcript reveals the following dialogue:

| | |
|---|---|
| ASSISTANT DISTRICT ATTORNEY: | "Did you ever go to the police or anybody with this story?" |
| THE JUDGE: | "I didn't hear you." |
| COUNSEL FOR DEFENDANT BERTH: | "Objection." |
| COUNSEL FOR DEFENDANT JONES: | "Objection." |
| THE JUDGE: | "I didn't hear the question." |
| ASSISTANT DISTRICT ATTORNEY: | "It's a legitimate question." |
| THE JUDGE: | "I haven't heard it." |
| ASSISTANT DISTRICT ATTORNEY: | "I will repeat it a little louder. Did you ever go to the police or anyone to tell them this, give them this testimony?" |
| THE WITNESS: | "To give them this testimony?" |
| ASSISTANT DISTRICT ATTORNEY: | "Yes." |
| THE WITNESS: | "The only person I talked to was my mother." |
| ASSISTANT DISTRICT ATTORNEY: | "Okay.  Thank you." |