COMMONWEALTH vs. JAMES W. MCDONOUGH.

Suffolk. April 6, 1987. — August 12, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Rape. Evidence*, Hospital record, Hearsay, Privileged communication, Communication between patient and psychotherapist, Expert opinion, Impeachment of credibility, Fresh complaint. *Witness*, Expert, Credibility. *Practice, Criminal*, Instructions to jury. *Constitutional Law*, Admissions and confessions, Waiver of constitutional rights. *Waiver*.

At the trial of an indictment for unnatural sexual intercourse with a child under age sixteen, the judge did not err in excluding certain portions of the victim's medical records on the ground that the records contained inadmissible privileged communications between patient and psychotherapist, where the doctor, a physician who was a resident in psychiatry, qualified as a "psychotherapist" as defined in G. L. c. 233, § 20B. [643-645]

At the trial of an indictment for unnatural sexual intercourse with a child under age sixteen, error, if any, in the judge's exclusion as evidence of a certain statement in the victim's hospital record was harmless where the material was cumulative of other evidence before the jury on the issue of the victim's credibility. [645-646]

No Federal constitutional rights of a criminal defendant were infringed by the trial judge's actions in reviewing, impounding and excluding certain portions of a victim's confidential hospital reports, where the judge more than met the requirements of the controlling Federal standard as set forth in *Pennsylvania* v. *Ritchie*, 480 U.S. 39 (1987). [646-647]

The findings of the judge at a criminal trial that two medical experts were not qualified, by reason of lack of personal knowledge, to render an opinion on the victim's mental and emotional condition were amply supported by the evidence. [647-648]

At the trial of an indictment for unnatural sexual intercourse with a child under age sixteen, the judge correctly excluded evidence that the defendant sought to introduce of numerous allegedly false accusations of rape made by the victim, where the offers of proof, while constituting independent third-party records that accusations were made, did not provide a factual basis for concluding the accusations were false. [648-651]

At the trial of a defendant charged with unnatural sexual intercourse with a child under age sixteen, the judge acted within his discretion in con-

cluding that certain statements made by the child victim to a police officer three months after the child left the control of his mother, who was also charged with sexually abusing him, were sufficiently prompt under the circumstances to constitute fresh complaint. [651-653]

No error appeared in the judge's instructions on fresh complaint at the trial of indictments for unnatural sexual intercourse with a child under age sixteen. [653-654]

The judge at a criminal trial, in denying the defendant's motion to suppress his statement to police, properly ruled that Miranda warnings, although given, were not required, where he found that the defendant was not in police custody at the time he made the statements; moreover, the judge's additional finding that the defendant effected a knowing, intelligent and voluntary waiver of his Miranda rights was amply supported by the evidence. [654-657]

INDICTMENT found and returned in the Superior Court Department on December 12, 1984.

The case was tried before *Guy Volterra*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kim Giampietro* for the defendant.

*Judy G. Zeprun*, Assistant District Attorney (*Phyllis J. Broker*, Assistant District Attorney, with her) for the Commonwealth.

LIACOS, J.   In November, 1984, a Suffolk County grand jury indicted the defendant, James W. McDonough, for forcible, unnatural sexual intercourse with a child under the age of sixteen.[1] The acts were alleged to have occurred between August 22, 1979, and May 14, 1982. After trial in the Superior Court in Suffolk County, the jury returned a verdict of guilty of statutory rape. G. L. c. 265, § 23 (1986 ed.).[2] The defendant was sentenced to a term of from seven to twelve years at the

---

[1] Five other defendants, including the child's mother, were also indicted for rape of the child. The trials were severed on motions of this defendant and another defendant.

[2] At the close of the Commonwealth's case, the judge had allowed so much of the defendant's motion for a required finding of not guilty as concerned the element of force.

Massachusetts Correctional Institution at Cedar Junction.[3] The defendant appealed, and we transferred the case to this court on our own motion.

We state some of the relevant evidence.[4] The victim lived with his mother in South Boston until he was six or seven years old. When he was approximately four years old, his mother showed him something that he was "going to be doing." The victim demonstrated to the jury how his mother had put her fingers in his mouth in a sexually explicit manner. He testified that she stated that this conduct would make friends and would make people happy. When he was four to five years old, he met the defendant at his mother's apartment and performed fellatio on him in his mother's presence. The victim testified that he was scared when he did this; he thought that his mother would hit him if he refused.[5] The victim could not remember how many times he had performed oral sex on the defendant, but he knew that it was more than once.

In January, 1982, when the victim was approximately six years old, he started to visit his father. In June, 1982, the father obtained temporary custody of the child. Permanent custody was granted to the father in April, 1983. In May, 1983, he told his father that he had performed fellatio on the defendant.[6] The victim testified that he did not tell his father

---

[3] A single justice of the Appeals Court allowed the defendant's motion for a stay of execution of his sentence pending appeal.

[4] We omit some of the sordid details. We shall examine other evidence in the context of the defendant's specific contentions.

[5] The victim testified that, on another occasion, his mother had thrown his head against the wall. When he went to get stitches at the hospital, he said that he had tripped and fallen down, because his mother had so instructed him and because he was afraid to tell the truth. The judge ruled that the records of the victim's hospital admissions on November 5, 1980, and January 14, 1981, were admissible on the ground that the records, showing head trauma, were relevant to the claim that the victim feared that his mother would hit him if he refused to perform fellatio on the defendant.

[6] The victim's father testified that the victim told him that fellatio was something his mother had taught the victim and had made him practice on her finger. The victim added later that the defendant used to give his mother money for the acts he performed.

right away because he was nervous, afraid, and embarrassed. When his father asked why he had done this, he answered that his mother had taught him and "told [him] it was a good way to make friends."

The victim's father informed the State police. Lt. Thomas L. McLaughlin of the State police spoke with the victim on August 10, 1983. The victim told the lieutenant that his mother initially had introduced him to pornographic material which depicted some of the acts she was talking about, required him to place his penis on her vagina, and told him that fellatio makes other people happy. He also told the lieutenant that he had performed fellatio upon the defendant and a male social worker for the Department of Social Services.[7]

Lt. McLaughlin then called the defendant's home on January 5, 1984, to ask the defendant to come to the police station. The defendant went voluntarily to the station three hours later. He spoke with the lieutenant and with Corporal Jack Nasuti. Lt. McLaughlin read the defendant the Miranda warnings. The defendant then signed and dated a Miranda card. During an approximately forty-five minute conversation, the defendant admitted that the victim had performed fellatio upon him three or four times over a period of two or three months.

The defendant testified that he knew the victim and the mother. He denied allowing the victim to perform fellatio on him. When asked whether he remembered telling Lt. McLaughlin that the victim had "sucked [his] penis maybe four or five times," the defendant replied that he "might have said that, but out of fear or something."

On appeal, the defendant argues that the judge erred by (1) excluding the victim's hospital records; (2) refusing to allow two physicians to testify as expert witnesses; (3) excluding evidence of allegedly false accusations of rape; (4) allowing Lt. McLaughlin to testify as to the victim's fresh complaint; (5) "improperly" instructing the jury on fresh complaint evidence; and (6) denying the defendant's motion to suppress his statements at the police station.

---

[7] The male social worker was one of the five other persons indicted.

1. *Hospital records*. The defendant argues that the judge erred by excluding certain medical records of the victim. The judge based his ruling on the grounds that the records contained hearsay and privileged matter. The defendant claims that the Commonwealth failed to prove that the records came within the psychotherapist-patient privilege, G. L. c. 233, § 20B (1986 ed.), primarily because a resident physician of Children's Hospital Medical Center, Dr. Barbara Burr, failed to qualify as a "psychotherapist" within the meaning of G. L. c. 233, § 20B.

Conversations between a psychotherapist and a patient, relative to the diagnosis and treatment of the patient's mental and emotional condition set forth in writing in a hospital record otherwise admissible under G. L. c. 233, § 79, may be inadmissible because of the statutory privilege. General Laws c. 233, § 20B, defines "communications" to include not only the conversations but also any record, memoranda, or notes thereof. *Usen* v. *Usen*, 359 Mass. 453, 455-456 (1971). A trial judge may also exclude portions of an otherwise competent hospital record if he determines that the record's impact would be more prejudicial than probative. *Commonwealth* v. *Perry*, 385 Mass. 639, 642 (1982).

The judge stated that he had examined each page of the records that defense counsel wished to read to the jury. He found that most of the otherwise relevant material in the records was "totem pole," or multiple, hearsay,[8] with the exception of

---

[8] Generally, evidence based on a chain of statements is admissible only if each out-of-court assertion falls within an exception to the hearsay rule. *Bouchie* v. *Murray*, 376 Mass. 524, 527-531 (1978). McCormick, Evidence § 313, at 883 (3d ed. 1984). See Fed. R. Evid. 805. "The preparer's hearsay sources must carry the same indicia of reliability, arising from regularity and business motives, that bring his own act of recording the information within the statutory exception. Thus, unless statements on which the preparer relies fall within some other exception to the hearsay rule, the proponent must show that all persons in the chain of communication, from the observer to the preparer, reported the information as a matter of business duty or business routine." *Wingate* v. *Emery Air Frèight Corp.*, 385 Mass. 402, 406 (1982). See *Julian* v. *Randazzo*, 380 Mass. 391, 394 (1980); *Commonwealth* v. *Ennis*, 2 Mass. App. Ct. 864 (1974)

portions relating to diagnosis and treatment which were inadmissible under the psychotherapist-patient privilege or the social worker-client privilege. G. L. c. 112, § 135 (1986 ed.). He further found that the apparent purpose of introducing the records was to attack the victim's credibility, by showing that his father had psychiatric problems of his own. The judge noted that, although he had conducted extensive voir dire examinations to allow defense counsel to develop that theme, it had never been developed. After impounding and identifying privileged information, the judge copied and distributed the record to both counsel. The judge indicated that he had permitted counsel for the defendant to examine the hospital records in order to permit the defendant full confrontational rights when his counsel examined the victim's father.

General Laws c. 233, § 20B, defines a "[p]sychotherapist" as "a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry *or* a person who is licensed as a psychologist by the board of registration of psychologists; provided, however, that such person has a doctoral degree in the field of psychology or is a registered nurse" (emphasis supplied).

The defendant's claim that Dr. Burr does not qualify as a "psychotherapist" is based on his argument that a person licensed to practice medicine who devotes a substantial portion of his or her time to psychiatry is not qualified unless that person also possesses a doctoral degree in psychology or is licensed as a nurse. This interpretation flies in the face of the clear language of the statute, the legislative history, and common sense. The statutory definition of a "psychotherapist" requires either a license to practice medicine and a substantial portion of time devoted to psychiatry *or* a license as a psychologist and a doctoral degree in psychology. General Laws c. 233, § 20B, was amended in 1977 by inserting the language on which the defendant relies. St. 1977, c. 817. The proviso regarding the doctorate was part of the new provision bringing psychologists within the prior definition. It is unreasonable to assume that the Legislature intended the requirement of a doctoral degree in psychology to apply also to the original provision regarding physicians.

In this case, Dr. Burr testified that she was a physician; that she had completed two years of a fellowship in child psychiatry, and that she was a resident in adult psychiatry at the time of trial. The judge ruled that Dr. Burr was a "physician specializing in psychiatry." We note that this court recently held in *Robinson* v. *Commonwealth*, 399 Mass. 131, 136 (1987), that the same doctor qualified as a psychotherapist within the meaning of G. L. c. 233, § 20B. There was no error.[9]

The defendant claims that the hospital records were relevant to the victim's bias, motive, and credibility. He also argues that the judge's "prohibition against use of the medical reports" to address the victim's mental stability and credibility deprived him of his constitutional right to cross-examination. This, the defendant maintains, resulted "in the denial of due process and of a fair trial, effective cross examination and confrontation as guaranteed by the Fifth and Sixth Amendments to the United States Constitution [and] Article 12 of the Massachusetts Declaration of Rights."

The defendant's characterization of the judge's ruling is misleading. The record establishes that the judge permitted counsel for the defendant to examine the hospital record and to use material from the hospital record to impeach the victim's father.

---

[9] The defendant also argues that "any privilege which could have existed was waived by the government in its inquiry of Barbara Burr." This argument is misplaced; the privilege belongs to the patient and must be waived by the patient. See, e.g., *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 399 Mass. 279, 290 n.21 (1987).

The defendant further claims that the Commonwealth failed to show that "communications were spoken between the alleged victim and a psychotherapist." We have reviewed the hospital records at issue in this case, and we conclude that the judge properly determined that they contained "communications" within the meaning of G. L. c. 233, § 20B.

The defendant also objects to the judge's failure to distinguish between records protected by the social worker-client privilege, G. L. c. 112, § 135 (1986 ed.), and the psychotherapist-patient privilege, and his failure to designate the particular individual and record to which the privileges applied. He made no such objections at trial, however, and gives no indication on appeal as to how he was prejudiced thereby.

The one passage from the hospital record which the defendant particularly complains of not being allowed to use stated:[10] "In spite of some strengths, [the victim] is a child with a severe psychiatric disorder. This is manifest by cognitive confusion over the events of his life (e.g. inability to distinguish real episodes of sexual abuse from the abundant and constant suggestions he receives from his father) . . . ." This passage appears in the victim's discharge summary from Children's Hospital, which was dictated by Dr. Burr and signed by Dr. Robert Riskind. It is repeated in a three-page letter to a social worker at Boston Children's Services, dated February 7, 1984, and signed by Dr. Burr, Dr. Riskind, Ester Schleifer, a licensed social worker, and Lee Farrington, a social work intern.

Assuming, without deciding, that this statement was an appropriate part of the hospital record, and further assuming, without deciding, that the statement was not inadmissible as an unusual or controversial diagnosis, *Diaz* v. *Eli Lilly & Co.*, 14 Mass. App. Ct. 448, 454 (1982), any error in excluding the statement was not prejudicial; the statement was cumulative of evidence before the jury. Defense counsel cross-examined the victim extensively and vigorously in an effort to impeach his credibility and to bring forth inconsistencies in his testimony.[11] The issue of the victim's credibility was more than adequately explored in the jury's presence.

As to the defendant's Federal constitutional claim, the Supreme Court has recently held in *Pennsylvania* v. *Ritchie*, 480 U.S. 39 (1987), that a criminal defendant charged with various sexual offenses was entitled only to have a trial judge review a confidential file in camera to determine whether it contained information that probably would have changed the outcome of

---

[10] As the defendant identifies no other particular statement as erroneously excluded, he waives his argument as to all but this portion of the record. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

[11] For example, trial counsel for the defendant specifically asked the victim whether he had ever lied. He also attempted to demonstrate inconsistencies in the child's testimony as to whether the defendant had kissed him; whether he ever had sperm in his mouth; whether the defendant went into the bathroom after the fellatio; and whether the male social worker for the Department of Social Services would take his pants down to his ankles when the victim performed fellatio on him.

his trial. The Court held that the Supreme Court of Pennsylvania had erred in holding that defense counsel must be allowed to examine the confidential information. The Court stated that "[t]o allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child abuse information." *Id.* at 1003. That case concerned a statutory privilege protecting records of a State protective service agency charged with investigating cases of suspected mistreatment and neglect of children. We note that the State's interest in protecting the confidentiality of patients' communications with psychotherapists is at least as strong as its interest in protecting disclosures to a State protective services agency. The judge below did more than is required under this Federal standard. We conclude that there was no violation of the defendant's Federal constitutional rights.[12]

2. *Expert testimony.* The defendant argues that the judge erred in ruling that Dr. Burr and Dr. Riskind were not qualified to render an opinion whether the victim could distinguish real episodes of sexual abuse from imagined ones. After an extensive voir dire, the judge found that, while Dr. Riskind was qualified as an expert, he had no personal knowledge of the victim's mental and emotional condition.

Dr. Riskind, a board certified psychiatrist, had been chief of service and attending psychiatrist at the specialized pediatric unit at Children's Hospital, where the victim was treated. While all children admitted to the unit were assigned to him as the attending physician, Dr. Riskind testified that he never reviewed the victim's referral information and that he never interviewed the victim individually. Further, while he had to sign every official hospital document regarding children on his units, he had never discussed with Dr. Burr the statement which the defendant wished to introduce.

Dr. Burr testified that she had first seen the victim in January, 1984, a significant time after the alleged incidents. Her

---

[12] The defendant does not develop an independent claim under art. 12. We do not reach that question. Mass. R. A. P. 16 (a) (4), as amended.

opinion at that time was that he was a child who "had difficulty forming relationships with adults, trusting adults, and talking about his feelings." Dr. Burr testified further that she had done no psychological testing of the victim, and that the victim "was unable to discuss any issues pertaining to alleged sexual abuse with [her]." She acknowledged, and the judge ruled, that "she is not in a position to assist this jury to determine whether or not the [victim], has or does not have the capacity to give objective evaluations and judgments about the real world, and, thus, appropriately advise the jury as to whether or not he was impaired to such an extent that fantasy overtook reality."

"[T]he qualification of a witness to offer an expert opinion on a given question is for determination by the trial judge as a preliminary issue of fact." *Commonwealth* v. *Seit,* 373 Mass. 83, 92 (1977). "Whether we say that he has a wide discretion in deciding the question, or that his ruling will be reversed only for error in point of law . . . the result is that such decisions at trial level are rarely upset on appellate review" (citations omitted). *Id.* See *Commonwealth* v. *Perry,* 385 Mass. 639, 645 (1982); *Commonwealth* v. *Gaulden,* 383 Mass. 543, 549 (1981). The judge's findings were amply supported by the evidence; there was no error. See *Campbell* v. *Thornton,* 368 Mass. 528, 540-541 (1975). Cf. *Commonwealth* v. *Garabedian,* 399 Mass. 304, 310 (1987).

3. *Prior accusations of rape.* At trial, defense counsel sought to introduce in evidence numerous allegedly false accusations of rape that were made by the victim.[13] After a lengthy and extensive voir dire, the judge ruled that only one of the prior accusations was admissible for the limited purpose of impeaching the victim's credibility. On appeal, the defendant argues that the judge erred in excluding evidence regarding the victim's other allegations.[14]

---

[13] Defense counsel attempted to show that the victim had made numerous false accusations of rape, ranging from having performed fellatio on several people to having "paraded" around nude in front of adults while they drank alcohol and took pictures.

[14] The defendant also challenges the judge's rulings regarding a list the victim gave to Herbert E. Johnson, a probation officer at the Probate and

At the voir dire, Lt. McLaughlin provided a list of persons upon whom the victim had allegedly performed fellatio. After disregarding references to other sexual activities, and to other children, the judge reduced the list to approximately eight names.[15] The defendant sought to call several of the accused persons to testify as to the falsity of the accusations. The judge allowed counsel for the defendant to ask whether the victim had mentioned the defendant to Lt. McLaughlin, but prohibited inquiry as to the other names unless he could show that the accusations were false. In a memorandum of decision and order, the judge set forth in detail his reasoning and his conclusions on this issue.

Based on Lt. McLaughlin's list and the essentially duplicative list of the victim's father, the judge determined that defense counsel had made a showing that some accusations had been made by the victim. However, only one accusation, concerning the male social worker for the Department of Social Services, was shown to contain an independent basis for a claim of falsity because one Linda Saucier, who was allegedly present when the victim performed fellatio upon the social worker, provided an independent third-party basis of falsity. One individual testified and denied the allegations. The judge found that "his denial did not, in itself, constitute sufficient evidence of falsity or even an exaggeration of truth as required in [*Commonwealth* v. *Bohannon*, 376 Mass. 90 (1978), *S.C.*, 385 Mass. 733 (1982), and *Commonwealth* v. *Sherry*, 386 Mass. 682 (1982)]." As to the other names, however, he ruled that there was " " "not a scintilla of evidence" showing that the statements

Family Court Department for Suffolk County, who had interviewed the victim and had testified at the voir dire. The judge found that Johnson could state in definite terms neither what names the victim mentioned, nor what exactly he said he had done with each person. Based on that testimony, the judge excluded any information he might have offered regarding prior accusations. He stated that Johnson's record and method of interview did not provide a proper foundation for any conclusion that the victim had accused anyone of rape.

[15] The victim's father also testified at the voir dire and stated that the victim had told him about incidents of fellatio, and he provided the court with a list of those individuals. The judge found that the list essentially duplicated Lt. McLaughlin's.

were anything but true accounts of past events. Rather, the defendant[ ] engaged in speculation that the statements demonstrated the victim's "idiosyncratic and distorted perceptions." Conjecture about "distorted perceptions" cannot substitute for some evidence which would warrant the jury in finding the statements inaccurate.' *Commonwealth* v. *Lefkowitz*, 20 Mass. App. Ct. 513, 515-516 (1985)."

The judge also stated that "the defendant was not denied his right to develop a defense of bias at trial as he was allowed extensively to cross-examine the victim and his father and adequately to put before the jury the issue of the [victim's parents'] child custody battle. See *Commonwealth* v. *Elder*, 389 Mass. 743, 751 (1983) ('where evidence of bias is available by other means, no evidence of the complainant's prior sexual history should be admitted')."

The judge concluded that, although the defendant had adequate time and wide latitude to develop a claim of bias through a theory of false accusations, the evidence fell short of what is required. The judge ruled that "[i]n the case at bar, with respect to all but one of the supposedly prior false allegations of rape, it was not demonstrated that the 'statements were false or even an exaggeration of the truth.'" *Commonwealth* v. *Sherry*, 386 Mass. 682, 692 (1982).

The defendant claims that he complied with the prerequisites for admission of prior false allegations of rape set forth in *Commonwealth* v. *Bohannon*, 376 Mass. 90, 95 (1978) (*Bohannon I*). He is mistaken. While his offers of proof — a police report, a probation report, and certain medical records — may constitute independent third-party records that allegations were made, they in no way provide a factual basis for concluding that the accusations were false.

"[T]he exception to the general rule barring evidence of prior false accusations is a narrow one. *Bohannon I* involved 'special circumstances,' *Commonwealth* v. *Sperrazza*, 379 Mass. 166, 169 (1972) . . . and is applicable only in 'unusual fact situations where justice demands.' *Commonwealth* v. *Trenholm*, 14 Mass. App. Ct. 1038, 1039 (1982)." *Commonwealth* v. *Hicks*, 23 Mass. App. Ct. 487, 489 (1987). In *Com-*

*monwealth* v. *Sperrazza, supra* at 169, we described the "special circumstances" of *Bohannon I* as follows: "[T]he witness was the victim in the case on trial, her consent was the central issue; she was the only Commonwealth witness on that issue, her testimony was inconsistent and confused, and there was a basis in independent third-party records for concluding that the prior accusations of the same type of crime had been made and were false." No such "special circumstances" warrant applying the exception of *Bohannon I* to this case. In *Bohannon I*, consent was the central issue. Here it was not an issue at all. Unlike *Bohannon I*, this victim was not the only witness on the central issue. The defendant himself admitted to Lt. McLaughlin that he allowed the victim to perform fellatio on him four or five times. At trial, after initially denying that he had made that statement, the defendant admitted that he "might have said it." Most important, there was no basis in "independent third-party records for concluding that the prior accusations of the same type of crime . . . were false." *Sperrazza, supra* at 169.

It was well within the judge's discretion to rule that defense counsel's offer of proof was insufficient to permit testimony of other witnesses and cross-examination of the victim regarding accusations of sexual misconduct against individuals other than the male social worker for the Department of Social Services. See *Commonwealth* v. *Sherry, supra* at 692-693; *Commonwealth* v. *Hicks*, 23 Mass. App. Ct. 487, 490 (1987). There was no error.

4. *Fresh complaint*. The indictment charges the defendant with rape of the victim "between August 22, 1979, and May 14, 1982, the exact date . . . unknown." The victim's father obtained temporary custody of the boy in June, 1982. The father testified that he did not recall if the victim stated to him, while he had temporary custody, that the defendant had sexually abused him.

Within one month after the father's obtaining permanent custody in April, 1983, the victim began telling him about sexual abuse by his mother and by the defendant. The father reported the incident to the State police, and the victim spoke with Lt. McLaughlin on August 10, 1983.

Defense counsel called the victim's father as a witness and elicited from him his son's story concerning his sexual abuse by his mother and the defendant. He cannot, therefore, complain on appeal that the judge allowed in evidence the victim's complaint to his father.

As to the child's complaint to Lt. McLaughlin, the defendant objected to admission of the lieutenant's testimony because of the time that had elapsed between the alleged incidents of abuse and the child's complaint to the officer. When he admitted the conversation, the judge noted that "since the child has already testified that he was under some fear of the mother by virtue of physical abuse, [and] that as soon as he had an opportunity, he described what had occurred . . . according to our case law, such is considered a fresh complaint even though a considerable period of time has elapsed."

"The determination whether statements are sufficiently prompt to constitute fresh complaints rests within the sound discretion of the trial judge." *Commonwealth* v. *Comtois*, 399 Mass. 668, 673 (1987), citing *Commonwealth* v. *Sherry, supra* at 691. The test is whether the victim's actions were reasonable in the particular circumstances of the case. *Id. Commonwealth* v. *King*, 387 Mass. 464, 473 (1982). "There is no absolute rule of law as to the time within which the victim of a sexual assault must make [his or] her first complaint of the assault in order to qualify that complaint for admission in evidence as a fresh complaint." *Commonwealth* v. *Bedard*, 6 Mass. App. Ct. 959, 959 (1978). See *Commonwealth* v. *Bailey*, 370 Mass. 388, 391-393 (1976).

In the present case, the victim was a young child whose sexual encounters with the defendant were coached and monitored by his mother, with whom he lived. He testified several times that "she said if I didn't do it, she would hit me. So I kept on doing it." The victim told his father approximately one month after his father gained permanent custody. His father then told the State police the following month; and the child's interview with Lt. McLaughlin came two months later. Thus, the child's conversation with the lieutenant, which the judge admitted as fresh complaint, occurred three months after the father gained permanent custody of the boy.

We have stated that, "where a young victim has been under the control of, and in reasonable fear of, a defendant who is a close relative, the promptness of a complaint is usually measured from the date when the victim leaves the defendant's control." *Commonwealth* v. *Comtois, supra* at 672 n.9, citing *Commonwealth* v. *King*, 387 Mass. 464, 473 (1982). In the particular circumstances of this case, where fear of his mother compelled the child's sexual activity with the defendant, we think the same rule should apply. There was no abuse of discretion in admitting the corroborative testimony of the lieutenant.[16]

5. *Instructions to the jury.* The defendant next complains that the judge failed to give proper instructions regarding the fresh complaint testimony of Lt. McLaughlin. He argues that the judge did not instruct the jury that they must consider both whether the victim's complaints were made "reasonably promptly," *Commonwealth* v. *Sherry, supra* at 691, and whether they corroborated his testimony.

The defendant's argument relies on a selective reading of the transcript and ignores the judge's final instructions to the jury. When Lt. McLaughlin testified regarding the victim's fresh complaint, the judge gave a preliminary instruction, told the jury he would instruct them more fully at the conclusion of the case, and asked counsel whether he had stated the principle correctly. The defendant made no objection and offered no correction to the instruction which he now attacks. At the most, if there was error, we would review the challenged instructions only to determine whether the charge as given created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Drew*, 397 Mass. 65, 81 (1986). There was, however, no error.

In his final instructions, the judge stated: "In considering such statements, you must first determine whether they were,

---

[16] Lt. McLaughlin's testimony was essentially cumulative of the testimony of the victim and his father. Consequently, even if we were to assume that it was error to admit that testimony, it was "not prejudicial." See *Commonwealth* v. *Blow*, 370 Mass. 401, 404 (1976), quoting *Commonwealth* v. *Izzo*, 359 Mass. 39, 43 (1971).

in fact, a prompt complaint about the incident. If they were not a prompt complaint . . . you may not consider such statements at all." He added that they should only consider the fresh complaint evidence "for the purpose of determining whether or not the victim . . . was truthful when he testified here in court." The defendant's claim ignores the well-established principle that "[w]e are concerned with the impression left with the jury by the charge as a whole." *Commonwealth* v. *Ramey*, 368 Mass. 109, 114 (1975). See *Commonwealth* v. *Doucette*, 391 Mass. 443, 450 (1984); *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980). We do "not [scrutinize] bits and pieces removed from their context." *Commonwealth* v. *Cundriff*, 382 Mass. 137, 153 (1980), cert. denied, 451 U.S. 973 (1981).

The judge's instructions, viewed as a whole, explained the principles of fresh complaint evidence with care and precision. There was no error, much less a miscarriage of justice.

6. *Voluntariness of the defendant's waiver*. The defendant's final claim is that the judge erred in denying his motion to suppress his January 5, 1984, statements to Lt. McLaughlin. He argues that the statements should have been suppressed because he lacked the mental capacity knowingly, intelligently, and voluntarily to waive his Miranda rights during his interview with the police. The Commonwealth maintains that the defendant was not subjected to custodial interrogation and that, even if he were, he was properly informed of his Miranda rights and made a knowing, intelligent, and voluntary waiver of those rights.

With court approval, the defendant underwent psychological tests to assess his mental capacity. The results of these tests were presented at a pretrial suppression hearing where the psychologists who had administered the tests, the defendant, and Lt. McLaughlin testified.

Based on the testimony and evidence presented, the judge made the following findings of fact. At approximately 6:30 P.M. on January 5, 1984, Lt. McLaughlin telephoned the McDonough residence and asked if the defendant would come to the police station to talk about his relationship with the

victim and his mother. The defendant arrived at approximately 9:50 P.M.; the lieutenant read him his Miranda rights prior to questioning. When asked if he understood his rights, the defendant replied several times that he did. The defendant testified that he understood that he could stop the questioning at any time but did not. He also stated that he wanted to answer any questions because he had "nothing to hide." The interview took forty-five minutes and included one break. He was not arrested after his interview.

The defendant's attorney hired Bruce Mermelstein, a psychologist, to conduct psychological tests to assess the defendant's capacity to understand and voluntarily waive his Miranda rights. Mermelstein testified that the only objective test administered, the Wechsler Adult Intelligence Scale, indicated that the defendant's full scale I.Q. was within the borderline range of intelligence and that he was "not mentally retarded." He opined that the defendant had "diminished cognitive capacity" and, therefore, did not have the mental capacity to understand his legal rights. On cross-examination, however, Mermelstein admitted that "diminished cognitive capacity" was just another way of saying that he was "just not very bright."

Based on those findings of fact, the judge made the following rulings of law. Since an individual's right to Miranda warnings is triggered by "custodial interrogation," *Commonwealth* v. *Haas*, 373 Mass. 545, 551 (1977), *S.C.*, 398 Mass. 806 (1986), the initial issue is whether the defendant was subject to "questioning initiated by law enforcement officers after . . . [being] taken into custody or otherwise deprived of his freedom of action in any significant way." *Commonwealth* v. *Bryant*, 390 Mass. 729, 736 (1984), quoting *Miranda* v. *Arizona*, 384 U.S. 443, 444 (1966). The judge applied the factors outlined in *Commonwealth* v. *Bryant, supra*,[17] and concluded that the de-

---

[17] In *Commonwealth* v. *Bryant, supra* at 737, we listed the following factors to be considered in determining whether an interrogation has taken place in a coercive environment: "(1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead,

fendant "reasonably could not have perceived the interrogation[ ] as coercive in nature." The police never threatened or abused the defendant. There was no mention of arrest, nor did an arrest occur. Therefore, the judge found that the statements attributed to the defendant were the product of a noncustodial interrogation. Since no Miranda warnings were necessary, whether the defendant voluntarily and intelligently waived his Miranda rights was irrelevant. The judge concluded, therefore, that the defendant's statement was admissible.

The judge further ruled that, even if the defendant's statements were the product of "custodial interrogation[ ]," they are nevertheless admissible if Miranda warnings were properly given and if a knowing, intelligent, and voluntary waiver was effected. The judge found that the defendant's waiver was made knowingly, voluntarily, and intelligently. As the judge indicated, the defendant was read his rights; stated that he understood those rights, signed the waiver portion of the Miranda card, and so testified at the suppression hearing. Although the defendant testified that he did not understand the Miranda rights at the relevant time, the judge correctly noted that he was not obligated to believe his testimony. *Commonwealth* v. *Day*, 387 Mass. 915, 919 (1983).

Furthermore, the judge found that the atmosphere of the interrogation was not threatening. After observing the defendant during his testimony and taking into consideration his educational and employment background, the judge was convinced beyond a reasonable doubt that he had sufficient mental capacity to understand his rights under *Miranda, supra*; that he did understand those rights; and that he effected a knowing, intelligent, and voluntary waiver of those rights when he signed the Miranda card on January 5, 1984.

"In reviewing a trial judge's determination that a voluntary waiver was made, the judge's subsidiary findings will not be

informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with the defendant's arrest."

disturbed, if they are warranted by the evidence, and his reso-
lution of conflicting testimony will be accepted." *Common-
wealth* v. *Tabor*, 376 Mass. 811, 822 (1978), quoting *Common-
wealth* v. *Santo*, 375 Mass. 299, 303 (1978). *Commonwealth*
v. *Mahnke*, 368 Mass. 662, 666 (1975), cert. denied, 425
U.S. 959 (1976). While the judge's ultimate findings and con-
clusions of law are open for this court to review, a finding of
voluntary waiver is "entitled to substantial deference by this
court." *Commonwealth* v. *White*, 374 Mass. 132, 138 (1977),
aff'd by an equally divided Court, 439 U.S. 280 (1978). The
judge properly ruled that Miranda warnings, although given,
were not required. Further, even if the defendant's statements
were viewed as the result of custodial interrogation, the evi-
dence amply supports the judge's ruling that the defendant
knowingly, intelligently, and voluntarily waived his Miranda
rights. While the reviewing court must scrutinize the record
with special care when the suspect has a diminished or subnor-
mal mental capacity, *Commonwealth* v. *Daniels*, 366 Mass.
601, 606 (1975), such scrutiny in this case reveals nothing to
criticize in the careful, thorough findings of the judge. There
was no error.

*Judgment affirmed.*