COMMONWEALTH vs. EDWARD GANT WILLIAMS.

Nos. 86-565 & 86-1085.

Suffolk. September 14, 1987. — December 30, 1987.

Present: GRANT, SMITH, & WARNER, JJ.

*Practice, Criminal,* Assistance of counsel, In camera inspection, Psychiatric examination, Disclosure of evidence. *Constitutional Law,* Assistance of counsel. *Assault with Intent to Murder. Intent. Witness,* Psychiatric examination, Credibility. *Evidence,* Privileged communication, Hospital record, Hearsay, Communication between patient and psychotherapist, Impeachment of credibility, Relevancy and materiality, Judicial discretion.

At a criminal trial, defense counsel's decision not to object to certain questions asked by the prosecutor was not shown to be manifestly unreasonable in the circumstances and did not demonstrate ineffectiveness of counsel. [213-215]

Failure of defense counsel to consult with the defendant at a criminal trial prior to concluding his cross-examination of a rebuttal witness for the prosecution and to ask certain questions the defendant had suggested did not amount to ineffective assistance of counsel in the absence of a showing that "better work might have accomplished something material for the defense." [215-216]

At a criminal trial, the judge did not err in denying the defendant's request that he be allowed to inspect the psychiatric records of a prosecution witness for any information relevant to her competency to testify and, based on an allegation that the records would establish that the witness had a motive to lie about the details of the crime, relevant also to her credibility, where the judge, after an in camera inspection of the records, had concluded that none of them bore on the issues for which inspection was sought. [216-218]

At a criminal trial in which defense counsel sought to ask a witness on cross-examination whether she had been taking medication at the time of the crime, and if she was on medication while testifying, the judge did not abuse his discretion in excluding the questions in the absence of a showing that any impairment resulting from the medication was relevant to the issue of the witness's credibility. [218]

At the trial of an indictment for armed assault with intent to murder, the judge did not err in denying the defendant's motion for a required finding

of not guilty with respect to the lesser included offense of assault with intent to kill, the crime of which the defendant was convicted, where there was ample evidence presented by the Commonwealth that the defendant had a specific intent to kill the victim. [219]

INDICTMENTS found and returned in the Superior Court Department on February 10, 1983.

The cases were tried before *Mel L. Greenberg,* J.

*John W. Laymon* for the defendant.

*David B. Mark,* Assistant District Attorney, for the Commonwealth.

SMITH, J. In the early evening hours of January 8, 1979, King Solomon, Jr., was shot at the home of his fiancée. The defendant was indicted in connection with that incident for the crimes of armed assault with intent to murder and assault and battery by means of a dangerous weapon.

At his trial the defendant admitted that he had shot Solomon but claimed that he had acted in self-defense. The Commonwealth contended that the defendant had shot Solomon without justification. He was convicted by a jury of so much of the indictment for armed assault with intent to murder as charged assault with intent to kill. He was also convicted of assault and battery by means of a dangerous weapon. In addition to claiming error by the trial judge, the defendant contends that he was denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.[1]

---

[1] After the defendant filed notice of appeal from his convictions, his appellate counsel filed a motion in this court requesting permission to examine psychiatric records of the chief Commonwealth witness. The same motion had been filed in the Superior Court by the defendant's trial counsel and denied. The motion was again denied, this time by a single justice of this court. The defendant appealed from that decision, and that appeal was consolidated with the defendant's direct appeal.

The defendant failed to argue in his brief the claimed error of the single justice in denying his motion. Where a defendant does not argue an issue in his appellate brief, it is deemed to be waived. *Commonwealth* v. *Pope,* 392 Mass. 493, 499 n.9 (1984). Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

We summarize the facts. The bulk of the evidence came from Alice (not her real name). She had lived with the defendant for about three years. They had a child in 1977. Their relationship was stormy, and he moved out of their apartment in June 1977. In February 1978, Alice met Solomon; they dated and made plans to marry.

In 1979, Alice and her son moved into an apartment in Boston. On January 8, 1979, about 8:30 A.M., Solomon came to the apartment with groceries. After putting the groceries away, he went upstairs to a bedroom to rest. That bedroom was located directly opposite the head of the stairs. There was a bathroom to the left of the head of the stairs.

About 10:30 A.M., the defendant came to the apartment. Alice had told him that he could have a living room set that he had previously purchased for her, which was still in their former apartment. Alice gave him the key and he left. Later, the defendant returned with the key. He went upstairs to use the bathroom. When he came back downstairs, he remarked, "[T]hat's an old man," referring to Solomon. Alice replied that Solomon's age did not matter to her, and the defendant then left the apartment without making any arrangements to return later.

Solomon woke up and came downstairs to watch television with Alice and her son. About 4:45 P.M., the defendant returned to Alice's apartment. He told Alice that he wanted to visit their son. Alice allowed the defendant to enter her apartment. She introduced him to Solomon, but the defendant declined to shake his hand. Shortly thereafter, Solomon went out to get a pizza. While Solomon was gone, the defendant told Alice that if he could not "have" her, then no one could. He told Alice that he had come to kill her and Solomon. Alice told the defendant that if he felt that way, he should leave. He refused. Solomon returned with the pizza and, after eating, went back upstairs to rest. The defendant remained downstairs.

Some time later, Alice asked the defendant to leave because it was getting late and she wanted to put their son to bed. As she was escorting the defendant to the door, he suddenly ran upstairs. Alice heard shots from the second floor. The defendant

came down the stairs, opened the inside front door, broke the glass in the storm door, and exited through the broken area.

Alice ran upstairs and found Solomon sitting on the floor beside the bed next to the dresser. He had a gun in his right hand.[2] Solomon was bleeding from the pelvic area. The police arrived and took Solomon to the hospital. He had been shot five times. Each bullet left two (entry and exit) wounds: two in the right thigh, two in the right forearm, two in the left thigh, two in the left pelvic area, and two in the scrotum.

Two days after he shot Solomon, the defendant telephoned Alice. He asked her if the victim had died. She answered "no" and hung up the telephone. The defendant was not apprehended until 1982. In the meantime, Solomon had died of natural causes. We now discuss the issues raised by the defendant.

1. *Ineffective assistance of counsel.* The defendant argues that the failure of his trial counsel to object to certain questions asked by the prosecutor constituted ineffective assistance of counsel.

During cross-examination of the defendant, the prosecutor asked whether he had ever struck Alice in the course of their relationship. He also asked if the defendant had broken Alice's arm as the result of a fight. Defense counsel did not object to the questions. The defendant admitted that he had struck Alice in the past but denied he had ever broken her arm. He also testified that he had written her a letter promising not to hit her again.

The standard for determining ineffective assistance of counsel is whether the lawyer's conduct fell "measurably below that which might be expected from an ordinary fallible lawyer — and . . . whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). See *Strickland* v. *Washington,* 466 U. S. 668, 687, 694 (1984), for the Federal standard. If the State standard is met, the Federal standard is

---

[2]The police later ascertained that the gun in Solomon's hand was fully loaded and had not been fired.

also satisfied. *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 n.3 (1985).

The defendant argues that the evidence was highly prejudicial, and that if his trial counsel had objected to the line of questioning, his objection would have been sustained.[3] However, one of the indictments on which the defendant was standing trial charged him with armed assault with intent to murder. That crime requires the Commonwealth to produce evidence of a specific intent to kill. *Commonwealth* v. *Henson,* 394 Mass. 584, 591 (1985). In regard to that element, it was the Commonwealth's contention at trial that the defendant was still emotionally involved with Alice, and that he intended to kill Solomon because of jealousy. Alice had testified that the defendant had told her that if he could not have her, nobody could and that he intended to kill her and Solomon. The evidence of physical abuse, which tended to show the defendant's powerful and violent emotions about Alice in the past, may well have been admissible to show the defendant's state of mind at the time of the shooting.

Even if the line of questioning was inadmissible, trial counsel's conduct did not fall below the standard set out in *Commonwealth* v. *Saferian,* 366 Mass. at 96. The failure to object to the questions by defense counsel may well have been a tactical decision on his part to have the jury consider that Alice's testimony against the defendant was based entirely on revenge, or even hatred, because of abusive treatment that she may have received from him. "When the arguably reasoned tactical or strategic judgments of a lawyer are called into question," in order to find ineffective assistance of counsel, "we require that such judgments be [shown to be] 'manifestly unreasonable.'" *Commonwealth* v. *Rondeau,* 378 Mass. 408, 413 (1979), quot-

---

[3] The defendant's argument receives some support from a comment made by the trial judge at a sidebar conference some time after the defendant answered the questions. The judge told defense counsel that, if he had objected to the line of questioning, he would have sustained the objection. However, we are sure that, if the defendant had objected, the judge would have listened to the prosecutor's reasons for admission of the evidence and would perhaps have admitted it.

ing from *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978). Here, the defendant fails to meet that standard.

The defendant argues also that his trial counsel was ineffective at another stage of the trial. The situation of which the defendant complains arose in the following manner. The defendant testified that after he shot Solomon, he went to the home of one Booker. While there, he told Booker that he had tried to shoot the gun out of Solomon's hand, and that Alice had told Solomon, "Shoot him [the defendant], King."

Booker testified as a rebuttal witness for the Commonwealth. She was cross-examined by the defendant. After redirect examination by the prosecutor, defense counsel approached the bench. He told the judge that he had not consulted with the defendant before concluding his cross-examination. The defendant wanted trial counsel to ask the witness whether, in fact, he had told her that he was trying to shoot the gun out of Solomon's hand and that Alice told Solomon to kill the defendant. The judge informed defense counsel, "Let's end it," and refused him permission to ask the questions.

Appellate counsel argues that trial counsel's failure to consult with the defendant and ask the questions suggested by him amounted to ineffective assistance of counsel. He claims that an affirmative answer would have corroborated the defendant's version of the facts and would have suggested to the jury that the defendant had intended to disarm Solomon without harming him.

The weakness in appellate counsel's argument is that he assumes that the witness would have corroborated the defendant's story if she was asked the questions by trial counsel. There is no showing that she would have. We do not believe that, in order to prevent a charge of ineffective assistance of counsel, trial counsel must ask questions to which he does not know the answers.

Even if the witness had been asked the questions and had answered them affirmatively, we doubt whether that would have been of significant assistance to the defendant's cause. The evidence was undisputed that Solomon was shot five times; most of the wounds were located in his thighs and the pelvic

area. None were in his hands. It is highly unlikely that the jury would have given much weight to the defendant's statement that he was only trying to shoot the gun out of Solomon's hand.

In any event, there is no showing that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977).

2. *Inspection of psychiatric records of Alice.* Alice had had a series of in-patient admissions at a Boston mental hospital over a period of approximately five to six years prior to the incident, as well as some out-patient treatments about the time the shooting of Solomon occurred. Prior to trial, the defendant requested that he be allowed to inspect Alice's psychiatric records for any information relevant to her competency to testify and to her credibility. He based his request on an allegation that the records would establish that Alice had a motive to lie about the details of the shooting.[4] According to the defendant, the records would show that Alice had been physically abusing their child, that he knew it, and that she was afraid that he would use that information to obtain custody of their child.

The judge made an in camera inspection of the records. He segregated two pages which related to the time frame of the incident. He then denied the motion, informing the defendant that none of the records bore on the issues for which he sought inspection. In regard to the segregated pages, the judge stated that he would review his ruling if the defendant were to lay a proper foundation at trial for an attack on Alice's credibility in regard to her conduct toward the child.

---

[4] At trial, the defendant gave his version of the shooting. He testified that he went upstairs to use the bathroom and that Solomon had threatened him. He noticed Solomon reach under the bed covers and come up with something in his hand. The defendant then hid behind a dresser. Alice came to the bedroom door and yelled at Solomon to "shoot him" and "kill him." The defendant saw a gun in Solomon's hand. He pulled out his own gun because he believed that Solomon was going to shoot him; he fired at Solomon and hit him.

Alice testified at the trial that she was downstairs at the time the shooting occurred.

On appeal, the defendant concedes that the psychiatric records come within the psychotherapist-patient privilege set forth in G. L. c. 233, § 20B. He argues, however, that the judge's denial of his motion violated his right to confront and cross-examine witnesses guaranteed by the Constitution of the United States and the Massachusetts Declaration of Rights.

The issues raised by the defendant have been explored, at some length, in several recent cases. See *Commonwealth* v. *McDonough,* 400 Mass. 639, 643-646 (1987); *Commonwealth* v. *Giacalone,* 24 Mass. App. Ct. 166, 170-171 (1987). In *Pennsylvania* v. *Ritchie,* 480 U.S. 39 (1987), the Supreme Court held that a defendant charged with various sexual offenses was entitled only to have a trial judge review, in camera, a confidential file of a State protective service agency charged with investigating cases of suspected mistreatment and neglect of children. That case concerned a statutory privilege protecting the records of the agency, but it has been held that "the State's interest in protecting the confidentiality of patients' communications with psychotherapists is at least as strong as its interest in protecting disclosures to a State protective services agency". *Commonwealth* v. *McDonough,* 400 Mass. at 647. In the instant case, the judge's in camera inspection of the records satisfied the requirements outlined in the various decisions on the matter.[5]

Nothing occurred at trial that would have given the judge any reason to change his ruling. The judge permitted the jury to hear evidence of the defendant's quarrels with Alice regarding her treatment of their child. She was vigorously cross-examined, and the record shows that her "credibility was more than adequately explored in the jury's presence." *Common-*

---

[5]On this record, it is doubtful that the defendant was even entitled to an in camera inspection of the records by the trial judge. "Before any in camera inspection of the privileged material can be justified, the defendant must show a legitimate need for access to the communications." *Commonwealth* v. *Two Juveniles,* 397 Mass. 261, 269 (1986). The main thrust of the defendant's motion for an inspection was for possible material to attack Alice's credibility. In general, a request for that purpose has been rejected. See *Commonwealth* v. *Two Juveniles, supra* at 268.

*wealth* v. *McDonough, supra* at 646. The defendant testified that he did not report any of his concerns about Alice's alleged physical abuse of the child to the police or to any other agency. He also admitted that he had never sought custody of his child. We reiterate that there was no error by the judge.

3. *Exclusion of evidence as to medication.* On cross-examination, defense counsel asked Alice if she had been taking medication at the time of the shooting, and if she was on medication while testifying. The judge excluded the questions on the ground that they were irrelevant. The defendant argues that the judge committed error because Alice was the only Commonwealth witness to testify concerning the events in question; her credibility was a central issue, and whether she had been or still was using medication for her psychiatric problems went directly to her credibility.

Evidence of use of drugs, if such would impair a witness's ability to perceive, remember, or articulate correctly, is admissible to attack a witness's credibility. *Commonwealth* v. *Caine,* 366 Mass. 366, 369 (1974). *Commonwealth* v. *Adrey,* 376 Mass. 747, 752 (1978). Any use of medication that would have a similar effect on a witness's capacity is also admissible. However, before evidence of use of such medication is admissible, there must be a showing that the impairment is relevant to the issue of credibility. Here, there was no showing of the particular line of questioning sought to be pursued.[6] "[T]he scope of cross-examination, including to what extent the accuracy, veracity, and credibility of a witness may be tested, rests largely in the sound discretion of the judge, not subject to revision unless prejudice is shown . . . ." *Commonwealth* v. *Caine,* 366 Mass. at 370, quoting from *Commonwealth* v. *Smith,* 329 Mass. 477, 479 (1952). No abuse of that discretion has been shown. See *Commonwealth* v. *Smith,* 329 Mass. 477, 479 (1952).

---

[6]During the trial, defense counsel had conversations with the judge about the admissibility of Alice's psychiatric records. Thus, he had ample opportunity to make a showing in regard to the possible use of medication by Alice during relevant periods.

4. *Denial of motion for required finding of not guilty of assault with intent to kill.* The defendant argues that the judge erred in denying his motion for a required finding of not guilty with respect to the lesser included offense of assault with intent to kill, the crime for which he was convicted, because the Commonwealth failed to present any evidence from which a rational jury could infer that the defendant had a specific intent to kill. See *Commonwealth* v. *Henson,* 394 Mass. at 591.

There was ample evidence presented by the Commonwealth that the defendant had a specific intent to kill Solomon. Alice testified that he told her that he was going to kill Solomon. In addition, an intent to kill may be inferred from the defendant's conduct. *Commonwealth* v. *Henson, supra.* Here, in addition to the death threat against Solomon, there was evidence that the defendant shot him with a handgun five times at close range. The jury could properly find from such conduct that the defendant had a specific intent to kill. *Commonwealth* v. *Gabbidon,* 398 Mass. 1, 5-6 (1986). *Commonwealth* v. *Fidler,* 23 Mass. App. Ct. 506, 514-515 (1987). The motion was properly denied.

*Judgments affirmed.*