## COMMONWEALTH vs. RICHARD RATHBURN.

No. 88-P-464.

Franklin. November 16, 1988. — December 28, 1988.

Present: GREANEY, C.J., KASS, & FINE, JJ.

*Rape. Indecent Assault and Battery. Constitutional Law*, Fair trial, Confrontation of witnesses, Assistance of counsel. *Evidence*, Privileged communication, Communication between patient and psychotherapist, Hearsay. *Privileged Communication. Practice, Criminal*, In camera inspection, Continuance. *Witness*, Credibility. *Rape-Shield Statute*.

At a criminal trial, there was no error in the judge's denial of the defendant's motion that he be allowed to use information in the victim's privileged psychotherapy records to demonstrate that the victim may have had a grudge against him because of the defendant's physical abuse of her, where the defendant was able to establish the fact of physical abuse through his own testimony and through cross-examination of the victim. [703-705]

In a criminal case, the judge correctly denied the defendant's motion to inspect the victim's privileged psychotherapy records, or to examine the therapist at a voir dire, where the records contained no information relevant to the incidents of sexual abuse alleged in the indictments. [705-706]

At the trial of indictments charging rape of a child and indecent assault and and battery on a child under age fourteen, the judge properly excluded evidence of prior sexual abuse of the victim offered by the defendant to account for the victim's knowledge of sexual acts and terminology, where the past abuse was not factually similar to the allegations of abuse being tried and where the victim's simple, concise, and straightforward description of the acts committed tended to demonstrate she was not drawing on previous incidents as the source of her testimony. [706-708]

At the trial of indictments for sexual abuse of a child, the judge properly excluded evidence purportedly demonstrating that the victim had made a prior false accusation of sexual misconduct against her stepfather where there was no evidence from any reliable independent third party record to warrant the conclusion that an allegation of abuse "had, in fact, been made and was, in fact, untrue." [709-711]

On appeal from convictions for rape a child and indecent assault and battery on a child under age fourteen there was no merit to the defendant's contention that he was denied the effective assistance of counsel at trial. [711-712]

INDICTMENTS found and returned in the Superior Court Department on January 16, 1986.

The cases were tried before *William W. Simons*, J.

*John M. Finn* for the defendant.

*Ariane D. Vuono*, Assistant District Attorney, for the Commonwealth.

GREANEY, C. J. A jury in the Superior Court convicted the defendant on an indictment charging rape of a child and on three indictments charging indecent assault and battery on a child under fourteen. He argues that the judge erred (1) by applying G. L. c. 233, § 20B, the psychotherapist-patient privilege, to deny his counsel the opportunity to examine records of a mental health clinic containing confidential communications between the victim and her therapist, (2) by excluding evidence of prior sexual abuse of the victim by her stepfather, which he suggests should have been admitted under the principles stated in *Commonwealth* v. *Ruffen*, 399 Mass. 811 (1987), and (3) by excluding evidence of an allegedly false accusation of rape made by the victim against her stepfather. Additionally, the defendant's counsel, who was also his trial counsel, argues that he furnished the defendant with ineffective assistance at the trial. We affirm the convictions.

The victim testified that on three separate occasions in June, July, and August of 1985 (the exact dates of which she could not remember), she was sexually abused by the defendant, who was her mother's boyfriend. The abuse occurred while the victim's mother was away playing bingo, and she (the victim) was left with the defendant who was babysitting her, her two younger brothers, and her younger sister. According to the victim (who was ten years old when the first two incidents occurred and had turned eleven before the last incident) the abuse consisted of: the defendant rubbing her body against his hard penis, inserting his finger into her "butt," and attempting to insert his penis into her (first incident); lying naked next to her in bed, getting on top of her and rubbing his penis on her leg

(second incident); and kissing her, rubbing his penis against her, and making her place her hand on his penis (third incident). About two weeks after the final incident, the defendant left the house permanently.[1]

There was fresh complaint testimony in corroboration of the victim's testimony given by her mother, by two visitors to the home, by the mother's former boyfriend, Dana Duteau, who was also staying at the home when the incidents occurred, and by the State police officer who investigated the allegations.

The defendant testified on his own behalf. He denied abusing the victim and indicated that the accusations had been fabricated by the victim, who disliked him because he had disciplined her. He also indicated that the victim's mother supported her daughter's accusations in order to get the defendant out of the house because she (the mother) had reestablished a relationship with Duteau.[2] The assertion that the mother's estrangement from the defendant, and her resulting dislike for him, led her to back up her daughter's accusations, was corroborated, in some aspects, by three other defense witnesses. The defense was also allowed to put in evidence certain parts of a report made by a social worker for the Department of Social Services (DSS). The report was an investigation of a child abuse complaint pursuant to G. L. c. 119, § 51B, and the defendant used it to show discrepancies between the victim's testimony at trial and her previous statements.

1. *Access to privileged information.* Prior to trial, defense counsel moved in writing for the production of any and all records of the DSS relating to the victim. A judge of the Superior Court (not the trial judge) allowed the motion, and subsequently permitted defense counsel to examine the DSS records, provided he did so alone in the clerk's office and

---

[1] The victim testified that, after the first two incidents, she complained to her mother that the defendant was "hurting" her. The mother, who testified that she did not fully understand the nature or gravity of her daughter's complaints, argued with the defendant over the assertions. As a result of the arguments, the defendant left the house for a few days after each occasion, but he was allowed to return.

[2] Duteau was the father of one of her children.

without making any copies of them. Defense counsel took advantage of the opportunity. The records (which are extensive) are not in issue, but we mention them to provide background for our discussion of the issue under consideration and to show that the defendant had wide access to materials to which he may not have been entitled.

On September 16, 1987, the third day of the trial, in response to a subpoena, additional records, apparently in the custody of DSS, were brought to court. The subpoena, issued by defense counsel, specifically asked for review of the records by the trial judge in camera. These records were from a mental health clinic which is part of the Human Resource Center for Rural Communities located in Athol. The records contain confidential communications between the victim and her primary therapist.

The trial judge made an in camera inspection of the newly produced records in the presence of defense counsel and the prosecutor. The trial judge indicated that the records contained material encompassing a period from 1982, when the victim had been sexually abused by her stepfather, through 1985, when she was allegedly abused by the defendant. Defense counsel told the judge that he specifically wanted to know whether or not the records disclosed that the victim had complained to her therapist about being sexually abused by the defendant. Counsel suggested that it would be important to the defense if the victim had not complained about the defendant because the absence of such complaints, in a setting in which they would be logically expected, would support the defendant's contention that the victim and her mother had fabricated the charges in order to get him out of the house.

In the course of examining the records, the trial judge mentioned to defense counsel that the records described beatings of the victim by the defendant with his belt. When he had completed his review of the records, the trial judge refused to respond to defense counsel's inquiry whether the records were devoid of any mention of sexual abuse by the victim to her therapist in June, July, or August of 1985. The trial judge then specifically found that the records disclosed "nothing . . . that is potentially exculpatory," and he ruled that the conversations

contained therein were protected by the psychotherapist-patient privilege provided for in G. L. c. 233, § 20B. Defense counsel's additional motions to examine the records himself, or to question the therapist about them at a voir dire, were denied. A subsequent request by defense counsel to use the records to show that the defendant had beaten the victim with his belt was also denied.

The defendant argues that the trial judge's denial of his motions to inspect the records for evidence of the lack of any complaints of sexual abuse by the victim against the defendant (or to examine the therapist about the subject at a voir dire), and to use the records to show the fact of the defendant's physical beatings, violated his rights to a fair trial, to confront and cross-examine witnesses, and to produce proof favorable to his defense, all as guaranteed by provisions of the United States Constitution and the Massachusetts Declaration of Rights.

The general issues raised by the defendant have been discussed in several recent cases involving the handling by trial judges of different kinds of privileged information in light of motions by defendants to obtain possibly exculpatory facts contained in various records. See *Commonwealth* v. *Two Juveniles*, 397 Mass. 261 (1986); *Commonwealth* v. *McDonough*, 400 Mass. 639, 643-646 (1987); *Commonwealth* v. *Clancy*, 402 Mass. 664, 669-671 (1988); *Commonwealth* v. *Giacalone*, 24 Mass. App. Ct. 166, 170-171 (1987); *Commonwealth* v. *Williams*, 25 Mass. App. Ct. 210, 216-218 (1988). See also *Commonwealth* v. *Lugo*, 23 Mass. App. Ct. 494, 501-505 (1987). These cases deal principally with the fair trial rights guaranteed by the United States Constitution, and they grapple with the vexing problem of protecting confidential communications while permitting a defendant the right to confront accusers and to present relevant proof that might create a reasonable doubt.

There can be no question that the trial judge's examination of the second batch of records in this case in camera, with defense counsel and the prosecutor present, met, or exceeded, any requirements imposed by the United States Constitution for

a case in which a defendant shows a legitimate need for access to information contained in materials made absolutely privileged by statute.[3] *Pennsylvania* v. *Ritchie*, 107 S. Ct. 989 (1987). *Commonwealth* v. *Clancy*, 402 Mass. at 664. *Commonwealth* v. *Williams*, 25 Mass. App. Ct. at 217. The defendant's arguments to the contrary are groundless.

We take note of the passage set out in the margin from *Commonwealth* v. *Clancy*, 402 Mass. at 670,[4] in light of the defendant's further argument that the fair trial rights embodied in the Massachusetts Declaration of Rights supersede any absolute privilege the victim·may have with respect to the records and, consequently, that the in camera procedure should have yielded to full examination by defense counsel. We need not address the argument or reach the question reserved in the *Clancy* decision.[5]

---

[3] We agree with the defendant that the absence of complaints about his sexual abuse of the victim at a time, and in a setting in which she would be expected to complain could be relevant to his contention that the victim may have fabricated the allegations in order to get him out of the house. Also, we agree with the defendant that his physical abuse of the victim could furnish proof of a motive for her to fabricate the accusations. These assertions satisfy the requirement that there be a preliminary showing by a defendant of a legitimate need to inquire into privileged records. See *Commonwealth* v. *Two Juveniles*, 397 Mass. at 269; *Commonwealth* v. *Giacalone*, 24 Mass. App. Ct. at 170-171.

[4] "The danger lurking in the practice of . . . an exclusive in camera review of the [privileged] file by the trial judge is a confusion between the roles of trial judge and defense counsel. The judge is not necessarily in the best position to know what is necessary to the defense. However, some accommodation must be made in striking a balance between a witness's privilege and the defendant's right to confrontation and a fair trial. We are not reaching the propriety of this practice under State law because the defendant relies exclusively on the United States Constitution and we are not suggesting that the result would be the same under State law."

[5] This issue in the context of the social worker's privilege, G. L. c. 112, § 135, may arise before the Supreme Judicial Court in Commonwealth *vs.* James Jones, SJC No. 4659. In that case, a judge of the Superior Court reported the following question: "Where a defendant has made a request for information (claiming that it would be useful to him) to be supplied to him from records otherwise confidential, should this be done by means of an in camera inspection by a justice of the Superior Court or should the inspection be left to attorneys for the defendant and the Commonwealth?"

First, the fact that the defendant had been abusive, physically and otherwise, to the victim was more than adequately brought out in the cross-examination of the victim and her mother and in the testimony of the defendant. The testimony included the fact that the defendant had beaten the victim with his belt and fully developed the point that the victim and her mother may have held a grudge against the defendant. The records of the mental health clinic, therefore, would have provided only minor corroboration of the existence of physical abuse. Where information contained in privileged material is already in evidence, or is available to be put in evidence from nonprivileged sources, we have no doubt that State law will maintain the full effect of the privilege. See *Commonwealth* v. *Elder*, 389 Mass. 743, 751 (1983).

Second, we have examined the records with attention to the absence of complaints by the victim about sexual abuse by the defendant. They disclose that the clinic had contact with the victim in 1982, in connection with a rape and other sexual crimes that had been committed by her stepfather. Thereafter, active contact between the victim and the clinic did not resume until June, 1984. From that time, there were weekly scheduled therapy sessions with the victim until early June, 1985, when the victim's relationship with the clinic was terminated. It appears that no therapy sessions were held *after* the three incidents that gave rise to the indictments against the defendant.[6] The trial judge's reference in his discussion with counsel to the records continuing until September, 1985, was apparently based on some scattered materials in the records attempting to follow up on a physical abuse complaint concerning the victim, which ultimately was not substantiated.[7]

---

[6] The last two therapy sessions were in June, 1985. Given the discussion between the therapist and the victim in those sessions, it can be said with reasonable assurance that the sexual assaults by the defendant had not yet occurred. Further any attempt by the defendant to refer to the June meetings, as ones at which discussion of the June incident should have taken place, would have involved speculation. There were no further therapy sessions after the June meetings.

[7] It was this reference, together with the judge's refusal to answer defense counsel's question about the absence of complaints, that has led defense counsel to speculate that there is information in the records which would be helpful to the defense.

The judge's finding that the records contained nothing excul-
patory reflects the fact that the victim appears to have had no
meetings with her therapist after the incidents in this case
occurred and, therefore, had no occasion to mention any sexual
abuse by the defendant. This resolves the issue. We add only
that there is nothing else in the records which could have helped
the defendant in any other way; a conclusion we can state with
some assurance now that we have read the transcript of the
trial and considered the contentions made there by the defend-
ant. Because the records contain no relevant information, it is
not necessary to decide whether State constitutional law would
afford the defendant the broad rights he requests. A substantial
issue will not be decided simply to ascertain whether a defend-
ant may have a right that cannot benefit him in any event.[8]

2. *Evidence of prior sexual abuse.* Before trial, the defendant
moved for permission to conduct a voir dire of the victim and
her mother concerning the sexual abuse of the victim by her
stepfather some years before. (The stepfather had entered guilty
pleas to indictments charging him with rape and some other
sexual crimes; the other crimes, according to counsel, involved
either unnatural and lascivious acts or indecent assault and
battery on a child.) At the hearing on the motion, defense
counsel relied upon *Commonwealth* v. *Ruffen*, 399 Mass. 811
(1987). The *Ruffen* decision holds that the rape shield statute,
G. L. c. 233, § 21B, will not preclude, in certain circumstances,
admission of evidence of prior sexual abuse of a child when
offered to show that the victim's earlier experience, rather than
any experience with the defendant, accounts for the victim's
knowledge of sexual acts and terminology. 399 Mass. at 814-

---

[8] The defendant makes two other contentions about the records. He argues
that they may not fall within the privilege contained in G. L. c. 233, § 20B.
The trial judge did not make express findings of each of the requisites
necessary to trigger the psychotherapist-patient privilege. His finding that
the privilege contained in § 20B applies, however, further implies that the
necessary foundational facts were present. There is sufficient support in the
records to warrant that implicit conclusion.

The defendant also argues that he should have been allowed to examine
the records for evidence of the step-father's prior sexual abuse of the victim.
This request was not made to the trial judge, and we decline to consider it.

816. In this manner, a defendant can challenge the reliability of the principal accusing witness by showing that the child's knowledge may have been acquired by prior experience, distinct from the conduct with which the defendant is charged. This may support a claim that the child has lied or fantasized. *Ibid.*

The trial judge granted the defendant access to the police reports and grand jury minutes regarding the prior sexual abuse and stated that he would hear further argument on the admissibility of the evidence after defense counsel had an opportunity to review the materials. Subsequently, just prior to opening statements, defense counsel again sought permission to introduce evidence of the prior abuse. At the hearing on this motion, defense counsel specifically conceded that the allegations of abuse against the defendant were not similar to those made against the victim's stepfather. Nevertheless, defense counsel argued that the *Ruffen* principle was applicable because the stepfather's abuse was, as he put it, "far greater" than the abuse with which the defendant was charged. The trial judge denied the request, finding that the abuse alleged against the defendant was different from that alleged against the stepfather, and that G. L. c. 233, § 21B, prevented the inquiry.

While we are doubtful that the defendant has furnished adequate appellate argument on the issue, we will deal with it so that the case can be put to rest.[9]

The *Ruffen* decision makes clear that, before evidence of the past sexual abuse of a child is admitted, the judge should determine that the past abuse is factually similar to the abuse in the case on trial and that the child victim displays knowledge of sexual matters beyond his or her years. Here, the trial judge found, with a basis in the information furnished to him, that the sexual acts involved in the prior case against the stepfather were not similar to the acts involved in this case. Defense

[9] There is fleeting reference to the issue in a footnote in the defendant's brief. The issue is discussed there in terms of not having to be reached if the privilege question discussed in part 1 of this opinion is decided in the defendant's favor. This observation is not entirely accurate because we probably would have to decide this issue as one likely to arise at any retrial.

counsel acknowledges this fact. This finding supports the judge's ruling.

Moreover, the testimony of the victim, who was thirteen at the time of trial, did not demonstrate "extraordinary knowledge" of sexual acts or sexual matters in general. See 399 Mass. at 814. The victim's use of such terms in her testimony as "penis," "butt," "hard," and "rubbing" cannot reasonably be viewed as "extraordinary." Further, the victim responded directly to the questions posed by the prosecutor, and her description of the sexual acts committed was simple, concise, and straightforward. Finally, in describing the separate acts of abuse, the complainant continuously interrelated specific details of a nonsexual nature concerning where the incidents took place, particular pieces of clothing, furniture, statements, and other actions. These details tended to demonstrate that she was not drawing upon the previous incidents of abuse which she suffered at the hands of her stepfather years earlier as the source of her testimony. We also place reliance on the trial judge's personal observations of the victim and his ability to assess her maturity based upon her sophistication, exposure to life experiences and mental capacity. The question raised a matter on which the judge had some discretion. Although it would have been preferable for the trial judge to have conducted a voir dire on the matter, there was no error in his exclusion of the evidence.[10]

---

[10] The defendant also argues that the evidence was needed to show that the victim and her mother could have manufactured the charges in order to get the defendant out of the house. This basis was not argued to the trial judge, the argument, as has been noted, being confined to the application of the *Ruffen* case. We note, however, that the defendant was able to present considerable evidence of the hostility existing between him and the victim, her mother, and the mother's current boyfriend, Duteau, who was a fresh complaint witness. The defendant was able to argue his theory of fabrication with sufficient evidentiary support. Further, as to the mother, the judge stated that he would allow the defendant to introduce evidence that the mother had stated that she had "gotten rid of". her ex-husband for having done the same thing as long as the victim's name was not mentioned. Defense counsel did not introduce this evidence. Finally, we agree with the judge's ruling that the allegation of sexual abuse of the victim by Duteau was not substantiated, and, therefore, not a proper subject of inquiry.

3. *Evidence of an alleged prior false accusation of rape.*
On the third day of trial, defense counsel filed a further motion
seeking, under *Commonwealth* v. *Bohannon*, 376 Mass. 90
(1978), to introduce evidence purportedly demonstrating that
the victim had made a prior false accusation of sexual miscon-
duct against her stepfather. The motion was made following
defense counsel's review of DSS reports made pursuant to
G. L. c. 119, §§ 51A and 51B.

The § 51B report was made as a result of an investigation
undertaken by the DSS in response to information received
from the victim's school nurse. Apparently, in March of 1984,
the victim arrived late for school one day and purportedly told
a classmate that the reason she was late was because "my
[step]father made me do it again." The classmate later told her
mother, who, in turn, called the school. A teacher, who re-
ceived the call, then spoke to the nurse, who ultimately con-
tacted DSS.

Included in the report was a summary of the DSS investiga-
tion, including interviews with the victim and her mother.
Without divulging the contents of the report, it is fair to say
that the victim would not confirm whether her stepfather was
abusing her again, but indicated that she would advise her
mother if anything improper took place in the future. It is also
fair to note that the DSS could not ascertain whether or not
sexual abuse was occurring again. After considering the argu-
ments of counsel, the trial judge rejected the defendant's po-
sition that the *Bohannon* decision permitted the elicitation of
this evidence for impeachment purposes.

*Commonwealth* v. *Bohannon*, 376 Mass. 90 (1978), sets
out an exception to the general rule that bars evidence of prior
false accusations of sexual misconduct. Specifically, the court
in *Bohannon* held that, in the unusual circumstances there
presented, a defendant accused of rape was entitled to put
before the jury evidence of prior false accusations of rape by
the complaining witness. The specific circumstances identified
by the court in *Bohannon* have been described as follows: "the
witness was the victim in the case on trial, her consent was
the central issue; she was the only Commonwealth witness on

that issue, her testimony was inconsistent and confused, and there was a basis in independent third-party records for concluding that the prior accusations of the same type of crime had been made and were false." *Commonwealth* v. *Sperrazza*, 379 Mass. 166, 169 (1979). See *Commonwealth* v. *Blair*, 21 Mass. App. Ct. 625, 629 (1986); *Commonwealth* v. *Hicks*, 23 Mass. App. Ct. 487, 489 (1987). The *Bohannon* exception "is a narrow one . . . and is applicable only in 'unusual fact situations where justice demands.' " *Commonwealth* v. *Hicks*, 23 Mass. App. Ct. at 489, quoting from *Commonwealth* v. *Trenholm*, 14 Mass. App. Ct. 1038, 1039 (1982). See *Commonwealth* v. *McDonough*, 400 Mass. 639, 650 (1987).

The victim's testimony in this case was neither inconsistent nor confused. The fact that the victim at times had to have her memory refreshed by her statement to the police did not render her testimony contradictory. Her description of the events was otherwise concise, clear, and reasonably detailed, and it did not in any way approach the level of inconsistency apparent in *Bohannon*. See 376 Mass. at 91 (in addition to many other inconsistencies the complainant testified that she had seen "in a mist" that she had been penetrated). Importantly, unlike *Bohannon*, consent was not considered as an issue in this case.

There was also no factual basis from any reliable independent third-party record, or any other probative evidence, that a prior allegation of abuse "had, in fact, been made and [was], in fact, untrue." 376 Mass. at 95. "For the *Bohannon* rule to apply . . . there has to be evidence warranting a finding of falsity. Otherwise, the allegations . . . would be irrelevant to any issue in the case." *Commonwealth* v. *Hicks*, 23 Mass. App. Ct. at 490. Here, the purported statement of the victim (which is an extreme example of "totem pole" hearsay),[11] even if construed as an allegation of abuse, was *not* supported by any concrete evidence that it was false. Further, unlike *Bohannon*, there is no "pattern of similar [false] allegations." *Ibid.*

---

[11] The statement was allegedly made to a classmate who told her mother, who in turn called a teacher, who then told the school nurse, who ultimately conveyed whatever information she had received to the DSS.

See *Commonwealth* v. *Blair*, 21 Mass. App. Ct. at 629 n. 8. For all these reasons, the trial judge exercised sound discretion in excluding further inquiry into the matter.

4. *Ineffective assistance of counsel.* The defendant's final claim is the assertion that he was denied the effective assistance of counsel. The defendant presents a catalogue of purported omissions and shortcomings, the crux of which is that his counsel was forced to proceed to trial inadequately prepared due to the denial of his motions for a continuance. The defendant further asserts that his trial counsel, who is also his appellate counsel, was fatigued, and that this caused significant omissions in his conduct of the case. Upon reviewing the defense counsel's asserted shortcomings, individually and in combination, we are satisfied that counsel's performance was not in any way "measurably below that of an ordinary, fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Reid*, 400 Mass. 534, 537 (1987).

Further, there was no abuse of discretion in the judge's denial of defendant's requests for a continuance. See *Commonwealth* v. *Habarek*, 402 Mass. 105, 108 (1988). Counsel had been appointed five months before the case was set for trial. The case was an old one, with the indictments dating back to January, 1986, and the underlying incidents of abuse to the summer of 1985. The defendant had already been granted one continuance, apparently representing that he would be prepared to go forward in September, 1987. There is no support in the record for the contention that the denial of defendant's motions prejudiced his case or otherwise "deprived the defendant of an . . . available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. at 96. The fact that a review of DSS records was involved did not render the case so complex that additional preparation time was necessary. There is nothing to show that defense counsel failed to present or accomplish something material. On the contrary, defense counsel vigorously presented his case by attempting to challenge the credibility and motive of the victim, her mother, and other witnesses. Defense counsel was able to peruse the DSS records and file a number of well argued and well presented motions regarding

that material. The resulting defense strategy was logical and consistent. Counsel also preserved the record of alleged errors for appellate review.

Additionally, there was no ineffective assistance of counsel based on any other ground claimed by the defendant. The purported failure of defense counsel to point out to the jury that the victim had not made any statements regarding penetration to the social worker who interviewed her after the incidents was not unreasonable or prejudicial to the defense as there was ample evidence from which the jury could have determined that penetration had occurred. See *Commonwealth* v. *Reid*, 400 Mass. at 540-541. Similarly, counsel's failure to elicit one statement from the victim's mother that was indicative of bias did not deprive the defendant of any substantial defense. More than adequate evidence of bias on the part of the victim and her mother was presented. The assertion that excessive fatigue may have marred defense counsel's performance is a weak one. From all that appears, counsel was subject to no greater stress than any other defense lawyer engaged in the trial of a major felony case. An examination of the whole record reveals that the defendant was adequately represented.

*Judgments affirmed.*