## COMMONWEALTH vs. CHARLES D. OWEN.

No. 00-P-1792.

Bristol. February 8, 2002. - March 10, 2003.

Present: PERRETTA, COWIN, & DOERFER, JJ.

*Indecent Assault and Battery. Child Abuse. Practice, Criminal,* New trial, Assistance of counsel, Voir dire. *Evidence,* Sexual conduct, Relevancy and materiality.

This court concluded that a criminal defendant convicted of indecent assault and battery on a child was entitled to an evidentiary hearing on his motion for a new trial, where the defendant demonstrated that his trial counsel had information that, if deemed admissible after a hearing, could have shown that the young victim had acquired her knowledge of the sexual matters to which she testified from past acts of similar sexual abuse committed by another, and where trial counsel's failure to preserve the defendant's rights to such a hearing was sufficiently significant in the context of the trial to make plausible an inference that the jury's verdict might have been otherwise but for the error. [544-549]

INDICTMENT found and returned in the Superior Court Department on May 10, 1995.

Following review by this court, a motion for a new trial, filed on January 25, 2000, was heard by *David A. McLaughlin,* J.

*Edward B. Gaffney* for the defendant.

*M. Catherine Huddleson,* Special Assistant District Attorney, for the Commonwealth.

PERRETTA, J. After we affirmed the defendant's conviction of indecent assault and battery upon his daughter,[1] see *Commonwealth* v. *Owen,* 46 Mass. App. Ct. 1121 (1999), he filed a motion for a new trial based upon the claim that he did not

---

[1]The defendant was found not guilty of forcibly raping his child. See G. L. c. 265, § 22A.

have competent counsel either at trial or on his direct appeal.[2] The defendant's argument on the motion, heard by a judge other than the one who had presided at trial, was that his trial attorney failed to present effectively his claim that he was entitled to a voir dire hearing pursuant to *Commonwealth* v. *Ruffen*, 399 Mass. 811 (1987), and that his appellate attorney failed to pursue this issue on his direct appeal.[3] We remand for further proceedings.

1. *The evidence at trial.* While the indictment specifies that the defendant's crimes against the victim, who was born in 1986, occurred when she was between five and nine years of age, she was ten years old at the time of trial.

As related by the victim, her parents separated prior to her birth, and she lived with her mother, stepfather, and three half-siblings. However, the defendant, her biological father, would take her for overnight visits almost every weekend. Although the victim stated that during these visits she engaged in various activities normal for a child of her age (bicycle riding, watching television, and playing), she also related that when she was five or six years of age, the defendant would remove her clothing and touch her "private places."[4] These incidents took place in a bedroom, the living room, and on the floor.

Describing the nature of the incidents, the victim told the jury how she would be playing in her bedroom, and the defendant would enter, remove her shirt and pants, pull her underwear down to her ankles, lie atop her, pull the blankets over them, and "start putting his penis in my vagina."[5] She also testified that after these incidents, "some stuff would come out" on the rug or the bed, that it was white and "sticky," and that the defendant would clean it up with a paper towel. There was

---

[2] The defendant has been represented by three attorneys — trial counsel, appellate counsel on his direct appeal, and present counsel on his postconviction motion.

[3] The sole issue presented on the defendant's direct appeal concerned the scope of fresh complaint testimony.

[4] As described by the victim, her "private places" were her "butt, . . . chest, and . . . vagina."

[5] On direct examination, the victim testified that she learned the terms "penis" and "vagina" in her fourth-grade class in health. Before then, she had referred to a penis as a "nee-nee."

an incident that took place in the defendant's living room: "He would take his penis and put it in my vagina, then he would turn me over and stick his penis in my butt." The victim also stated that the defendant would rub her chest with his hands and kiss her on the cheeks and lips. On one occasion, he removed her underpants and "lick[ed]" her vagina. Although the victim never actually saw the defendant's penis, she could feel it against her buttocks and vagina. She described the defendant's penis as "slimy," and hard, not like a stone but "[a]lmost like a rubber ball."

As explained by the victim, her delay in making any complaint until March, 1995, was due to her lack of understanding about what the defendant was doing to her. Once she comprehended the nature of the defendant's acts, she complained to her sister and mother. The mother notified the police, and the victim was interviewed by law enforcement authorities and examined by medical professionals.

In addition to the victim, the Commonwealth called her sister, mother, and a police detective to testify, as well as a physician who examined her shortly after her disclosure. The written report of another physician was also read in evidence. Both physicians reported to the effect that their examinations revealed no specific physical findings of sexual abuse or evidence of trauma.[6]

Various members of the defendant's extended family as well as the defendant testified. The testimony that most undermined the Commonwealth's case, if accepted by the jury, came from the victim's "best friend," a cousin. Although the cousin testified that the victim told her that she was not seeing her father, the defendant, "because he had sex with me," the cousin also testified that the victim immediately thereafter told her that the accusation was a lie and swore her to secrecy. Upon cross-examination, the cousin testified that the victim told her that she hated the defendant and "just want[ed] to get him in trouble."

2. *The closing arguments.* Based upon this evidence, the defendant argued that the victim had concocted her allegations because she was jealous and resentful of the defendant's atten-

---

[6]After the first physician testified, the judge instructed the jury that the medical findings on the matters in issue were inconclusive.

tion to his dog. The prosecutor told the jury that they had two basic issues to decide — had the victim been sexually abused and was the defendant the abuser. On the first question, the prosecutor stressed that the young victim could not have knowledge of the sexual acts about which she testified had she not been abused.

As earlier stated, the jury acquitted the defendant of the rape charge, see note 1, *supra,* but convicted him of indecent assault and battery.

3. *The motion for a new trial.* After we affirmed his conviction, the defendant filed a motion for a new trial along with affidavits from his trial attorney and current counsel. The affidavits set out information in support of the allegation that trial counsel as well as counsel on the direct appeal knew or should have known that the victim could have acquired her knowledge of the sexual matters about which she testified from sources other than the alleged acts of abuse by the defendant. The motion is based upon the claim that because of the alleged failures of the defendant's prior attorneys, the information concerning the past abuse of the victim was never made known at trial or on the direct appeal.

a. *Prior counsels' alleged failures.* Relying upon *Commonwealth* v. *Ruffen,* 399 Mass. at 814-816, *Commonwealth* v. *Bishop,* 416 Mass. 169, 182-183 (1993), and *Commonwealth* v. *Pyne,* 35 Mass. App. Ct. 36, 38-40 (1993), trial counsel filed a motion in limine by which he sought to introduce in evidence a report made by the Department of Social Services (DSS) pursuant to G. L. c. 119, § 51A, dated October 11, 1988. He claimed that the report was material and relevant because it "prove[d] that the [victim] was previously exposed to sexual abuse." Although this report is not in the record before us,[7] current counsel stated in his affidavit that trial counsel was able to reconstruct its contents from the notes in his (trial counsel's) case file. According to trial counsel's affidavit, those notes reflect that the 1988 DSS report indicated that the then two year old victim "was able to verbalize that she had observed her

---

[7]Neither the defendant's trial attorney nor current counsel have the report. According to the Commonwealth, the report was most probably returned to DSS after either the trial or the defendant's direct appeal.

mother and [her live-in boyfriend] hugging and kissing in bed with no clothes on,'' that she had been in possession of photographs depicting them in the nude, and that she had played with anatomically correct dolls in a sexual manner.

At the hearing on the motion in limine, the trial judge stated that the issue before him was the admissibility of the information contained in the DSS report and not the report itself, that he was deferring his ruling until trial counsel culled from the report the evidence he wished to present, and that he then would conduct a voir dire hearing.[8] Both the transcript and the affidavits in support of the motion for a new trial establish that trial counsel neither objected to the ruling nor renewed his motion at any time during the trial.[9]

Trial counsel also acknowledged in his affidavit that in the course of pretrial discovery, he had received additional information concerning prior sexual abuse of the victim which he never brought to the attention of the trial judge at the hearing on the motion in limine. See note 8, *supra*. According to his affidavit, trial counsel was given a report, dated March 28, 1995, made by a civilian investigator for the prosecutor's office which included another report, dated March 25, 1995, from a DSS social worker as well as a report, dated April 27, 1995, from a police detective. Those reports contained information that

_____

[8]More specifically, he stated:

"[W]e have a Motion in Limine . . . . I'm going to defer the hearing of that until, I would assume, in the course of the defendant's case. But let me make a few observations in advance.

"First of all, we would have a hearing on that subject. Secondly, let me suggest that normally it would not actually be the records at any rate that we'd be talking about, because they would be hearsay. It, rather, would be a question as to whether the evidence which is in the record, if it was produced in the appropriate form, was admissible.

"So that I can consider the matter if you would pull out those parts of the record and we have a hearing without the public present [*sic*]. But I don't see any reason to have it in advance. So we'll save that."

[9]The subject of prior sexual abuse arose during cross-examination of the victim, but the Commonwealth quickly squelched the topic with a successful objection.

indicated that the victim's cousin, Matthew,[10] had asked her, when she was about four or five years old, if he could touch her private parts, that he had put his penis in her mouth while telling her that "it tasted like bubble gum," that on another occasion an adolescent relative "put his hands down her shirt," and that the victim's aunt had told the police detective that the victim had accused her son, Matthew, of fondling her.

As for the defendant's attorney on his direct appeal, current counsel's affidavit sets out facts in support of the claim of ineffective representation by reason of that attorney's failure to present the issue to an appellate panel.[11]

b. *The motion judge's ruling.* Upon consideration of all the information set out in the affidavits and attached exhibits put before him, the motion judge impliedly assumed, without deciding, that the performance of trial counsel fell measurably below that which might be expected from an ordinary fallible lawyer. Proceeding on that assumption, he reasoned that because the facts set out in the affidavits were not the same as the charged incidents of abuse, it was "far from clear that the 'unused evidence' would have been admissible at trial." Consequently, he concluded that the defendant had failed to demonstrate that he was likely deprived of an otherwise available defense, see *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), or that his conviction gave rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).[12] This conclusion also disposed of the claim against counsel on the defendant's direct appeal. Cf. *Breese* v. *Commonwealth*, 415 Mass. 249, 252 (1993) ("If the defendant received effective assistance of counsel at trial, there can be no argument that either first or second appellate counsel was ineffective for failing to argue that trial counsel was ineffective").

[10]A pseudonym.

[11]Current counsel related in his affidavit that in several conversations with appellate counsel, the latter stated, after reviewing his file on the case, that he had no memory of the motion in limine or of "considering it and the evidence related thereto as an issue on appeal."

[12]Because of the procedural posture of this appeal, it makes no difference whether we apply *Saferian* or *Freeman*. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624 n.4 (1994); *Commonwealth* v. *Azar*, 435 Mass. 675, 686-687 (2002); *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 n.4 (2002).

4. *Discussion.* The central question before us is whether the defendant demonstrated that the representation provided by his trial attorney gave rise to a substantial risk of a miscarriage of justice, or put another way, whether the defendant showed "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer . . . [that] has likely deprived the defendant of an otherwise available, substantial defence." *Commonwealth* v. *Saferian*, 366 Mass. at 96. See note 11, *supra.* In considering this question, "we are in as good a position as the motion judge, who was not the trial judge and who heard no evidence." *Commonwealth* v. *Curtis*, 417 Mass. 619, 626 (1994). We conclude that the affidavits and exhibits attached to the defendant's motion, considered with the evidence at trial, meet the two-prong test set out in *Saferian.*

Trial counsel demonstrated his awareness of the applicable law by citing *Commonwealth* v. *Ruffen*, 399 Mass. at 815, in his motion in limine. There the court held:

> "If a defendant challenges the reliability of a child's testimony about sexual abuse, it is unfair to deprive him of the right to show that the child had personal knowledge of sexual acts and terminology. *State* v. *Howard*, 121 N.H. 53, 61 (1981). *State* v. *Peterson*, [35 Wash. App. 481, 485 (1983)]. Thus, the defendant in this case, because he had a reasonable suspicion and a good faith basis for the inquiry, should have been permitted a voir dire examination of the victim's mother and of the victim to determine whether the victim had been sexually abused in the past. If the victim had been sexually abused in the past in a manner similar to the abuse in the instant case, such evidence would be admissible at trial because it is relevant on the issue of the victim's knowledge about sexual matters. *Id.*"

*Commonwealth* v. *Ruffen*, 399 Mass. at 815-816, sets out a two-step process for a determination concerning the admissibility of evidence of prior sexual abuse to show that the victim could have acquired knowledge of sexual matters and terminology from that abuse that could account for her testimony at trial. The first step requires some showing of "a reasonable suspicion and a good faith basis" for seeking permission to

question the victim about prior sexual abuse. *Id.* at 815. Absent such a demonstration, the issue dies. *Id.* at 816. Conversely, if the defendant makes the requisite showing, he is entitled to a voir dire examination to determine whether the victim "had been sexually abused in the past in a manner similar to the abuse in the instant case." *Id.* at 815. See *Commonwealth* v. *Walker*, 426 Mass. 301, 306-308 (1997).

According to the information available to trial counsel at the time of his motion, he had in his possession various police reports as well as reports from the DSS which showed that when two years old, the victim saw her mother and a male friend in bed and, at that time, she engaged in play with anatomically correct dolls in a sexual manner; that when the victim was four or five years of age, an adolescent relative touched sexual parts of the victim's body and inserted his penis into her mouth while telling her how the penis would feel; and that another adolescent put his hands inside her shirt and felt her breasts and fondled her.

This information was sufficient to show that trial counsel had "a reasonable suspicion and a good faith basis" for wanting to inquire of the victim and others about any past sexual abuse. Had trial counsel pursued his motion and presented all the information then available to him to the trial judge, he would have been entitled to a voir dire. *Commonwealth* v. *Ruffen*, 399 Mass. at 815. However, without design or reason, he failed to do so.

Trial counsel expressly admitted in his affidavit that his failure to pursue the *Ruffen* issue after the trial judge had deferred ruling on the matter was due to "unintentional oversights" and "not strategic choices." There is nothing in the record before us that refutes or otherwise casts doubt upon the veracity of trial counsel's affidavit.[13] Based upon his theory of defense, that the victim was fabricating the charges, evidence of prior sexual

---

[13]Although the motion judge found it unnecessary to decide the question of trial counsel's competency, he nonetheless noted that it was "interesting" that trial counsel was attempting to garner information to show that the victim was lying about having been sexually abused by the defendant while also seeking, on the basis of *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 756 (1995), to preclude the Commonwealth from presenting the testimony of expert witnesses on the issue whether the victim was a sexually abused child.

abuse similar to that alleged against the defendant could only have bolstered the defense. Compare *Commonwealth* v. *White*, 409 Mass. 266, 272 (1991) ("In cases where tactical or strategic decisions of defendant's counsel are at issue, we conduct our review with some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful"). In short, there was nothing to lose and everything to be gained by pursuing the motion for the voir dire. Trial counsel's failure to do so constitutes incompetency or inattention well within the comprehension of *Saferian*.[14]

The question now is whether trial counsel's inattention "likely deprived the defendant of an otherwise available, substantial ground of defense." *Commonwealth* v. *Saferian*, 366 Mass. at 96. On this issue, the motion judge, relying on *Commonwealth* v. *Rathburn*, 26 Mass. App. Ct. 699, 707 (1988), concluded that the affidavits and exhibits attached to the motion for a new trial failed to show any prior sexual abuse of the victim that had the "requisite degree of factual similarity" to the charges against the defendant.

We see nothing in either *Ruffen* or *Rathburn* that mandates that the evidence of prior sexual abuse of the victim be *identical* to or the *same* as that of which the defendant stands accused. Rather, we read *Ruffen* and its progeny to hold that for any evidence of prior sexual abuse adduced at the voir dire to be admissible at trial, that evidence must show that the prior abuse

---

We do not share the motion judge's suggestion that trial counsel's *Trowbridge* motion was somehow inconsistent with his theory of defense. In the first instance, we think that defense attorneys should be able to file pretrial motions based upon alternative grounds in order to prepare a defense without running the risk of allegations of inconsistency. The very function of pretrial motions is to assist defense counsel in preparing an effective defense. Secondly, we do not think that any exclusion of expert testimony concerning whether the victim's behavior in any way conformed to that of a sexually abused child was necessarily inconsistent with or contrary to the theory of defense in the instant case. Although a denial of the *Trowbridge* motion would not have assisted trial counsel, its allowance, taken in conjunction with the *Ruffen* motion, would have left open the question whether the defendant was the abuser.

[14]The Commonwealth has made no argument about trial counsel's competency and, instead, has tracked the motion judge's analysis and focused upon the question whether the representation provided the defendant at trial deprived him of an available and substantial defense.

of the victim was sufficiently similar to the present allegations to account for the victim's knowledge of the matters comprehended by the indictments against the defendant. Once that showing has been made, the proffered evidence is admissible *and* relevant on the issue of the victim's knowledge of sexual matters "unless barred by some statute, rule, or policy of exclusion." Liacos, Massachusetts Evidence § 4.1.2, at 109 (7th ed. 1999). *Commonwealth* v. *Ruffen*, 399 Mass. at 816. We think *Rathburn* too factually distinguishable to be applicable and, instead, look to *Commonwealth* v. *Scheffer*, 43 Mass. App. Ct. 398 (1997).

In *Commonwealth* v. *Rathburn*, 26 Mass. App. Ct. at 707, defense counsel "specifically conceded" that the evidence of prior sexual abuse was not similar to the allegation of abuse in issue at trial. Instead, he argued that because the past abuse was " 'far greater' than the abuse with which the defendant was charged," *Ruffen* controlled. *Ibid.* Because of the lack of similarity between the past and current acts in issue as well as the fact that the victim's testimony at trial failed to demonstrate that she was drawing upon any past abuse to explain her knowledge about the facts she was relating, the court concluded that "[a]lthough it would have been preferable for the trial judge to have conducted a voir dire on the matter, there was no error in his exclusion of the evidence." *Commonwealth* v. *Rathburn*, 26 Mass. App. Ct. at 708.

On the other hand, in *Commonwealth* v. *Scheffer*, 43 Mass. App. Ct. at 399-400, the five year old victim complained to her mother that the defendant had "stuck his finger in [her] peaches." Prior to trial, defense counsel had knowledge of the victim's past allegations that two male cousins had "stuck fingers in [her] private" and that her named uncle had "put his private in [her female cousin's] private." Based upon that knowledge, defense counsel brought a motion pursuant to *Commonwealth* v. *Bohannon*, 376 Mass. 90, 95 (1978), but failed to show any basis for thinking the prior allegations were false. That being so, the trial judge excluded the evidence. On the defendant's direct appeal, the court concluded that defense counsel should have brought his motion pursuant to *Ruffen* rather than *Bohannon*. The mistake "was sufficiently significant

that, plausibly, 'the result might have been otherwise but for the error.' " *Commonwealth* v. *Scheffer*, 43 Mass. App. Ct. at 400, 401.

Notwithstanding the victim's testimony concerning the particulars of the defendant's home and acts against her, the jury acquitted him on the charge of rape. There is a basis in the evidence for that verdict. The jury easily could have attributed the victim's knowledge of the defendant's residence to her overnight visits with him. In light of the testimony given by the two physicians who had examined her, see note 6, *supra*, the jury also could have declined to accept the victim's testimony that the defendant had "put" his penis "in" her anus and vagina.

Other than the testimony of the victim's cousin, that the victim told her that her accusations were "lie[s]," there was nothing in evidence to challenge the victim's testimony as it pertained to the charge of indecent assault and battery, that is, that the defendant rubbed her chest with his hands, licked her vagina, and placed his penis near or on her buttocks and vagina. The absence of such evidence was highlighted in the prosecutor's closing argument:

> "[C]onsider and ask yourselves, well, what did she say? What was the detail? What is she talking about? Well, she talked about, in very descriptive terms, sexual activity that no eight-year-old child would know unless it happened to them. . . . And what detail is that? Well, she talks about what her father's penis felt like. And remember what she said. I asked her, what did it feel like? Well, it felt hard. So I said, well, did it feel hard like a rock? Because if she said yeah, it felt hard like a rock, then you might think, well, she never touched his penis. It never touched her. But what does she say? No. It felt hard like a rubber ball. Well, does that have the ring of truth, and is that what a ten-year-old child would compare the male sex organ to? Yeah, it is, I'd suggest to you."

Given the fact that trial counsel had information that, if deemed admissible after a *Ruffen* hearing, could have shown that the victim had acquired her knowledge about the fondling of breasts and her familiarity with a penis from a different source, we can only conclude that trial counsel's failure to preserve his rights to a *Ruffen* hearing was "sufficiently

significant in the context of the trial to make plausible an inference that the [jury's] verdict might have been otherwise but for the error." *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999), quoting from *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986). But for trial counsel's failure to press his *Ruffen* motion, such evidence might have been presented.

Because we do not know what, if any, evidence would have come from a hearing on the *Ruffen* motion, we cannot hold that the defendant is entitled to a new trial. Such a conclusion would grant him a remedy greater than that to which he is entitled. Instead, we conclude that the defendant deserves an evidentiary hearing on his motion for a new trial for the limited purposes of determining whether the victim had been sexually abused in the past in a manner sufficient to show that her knowledge of the facts that she described at trial could have been based upon knowledge gleaned from past acts of sexual abuse. See *Commonwealth* v. *Pyne*, 35 Mass. App. Ct. at 40-41.

5. *Conclusion.* The case is remanded to the Superior Court for an evidentiary *Ruffen* hearing. If the judge who conducts the hearing determines that admissible evidence exists to show that the victim was sexually abused in the past in a manner that reasonably could account for her knowledge of sexual matters demonstrated at trial, the defendant's motion for a new trial is to be granted. Otherwise, the judge is to deny the defendant's motion for a new trial.

*So ordered.*